[Crim. No. 975.  Second Appellate District, Division One.—October 25, 1923.]

## THE PEOPLE, Respondent, v. EDWARD PATTERSON, Appellant.

[1] CRIMINAL LAW—PERJURY—READING OF CONFESSIONS—PREJUDICIAL ERROR.—In a prosecution for perjury growing out of testimony given by the defendant on the trial of a criminal action against others for murder to the effect that on the night of the homicide one of the alleged murderers was at the home of defendant, the reading to the jury, over defendant's objection, of confessions of said murderers, containing statements tending strongly to show that said alleged murderer was not at the defendant's home on the evening of the homicide, by a witness for the prosecution who had just previously testified to a conversation in his presence between a deputy district attorney and the defendant, in the course of which the witness stated the deputy district attorney read said confessions to the defendant, constituted prejudicial error where it was not claimed that the defendant was present at the time said murderers made their purported confessions, nor that the defendant was in any way responsible for their acts or statements at any time, nor that he ever knew, before the documents were read to him, that they had ever made any statements regarding their part in the murder, and where outside of such confessions, there was no evidence that the said alleged murderer was not at the defendant's house on the night of the homicide.

[2] ID.—MATERIALITY OF TESTIMONY—RULE.—In a prosecution for perjury the matter sworn to need not be directly and immediately material; it is sufficient if it be so connected with the facts directly in issue as to have a legitimate tendency to prove or disprove such fact, by giving weight or probability to the testimony of a witness testifying thereto or otherwise.

[3] ID.—EVIDENCE—PERJURY.—In such prosecution, the testimony of defendant given on the trial of a criminal action against others for murder that one of the alleged murderers, on the night of the homicide, came into defendant's house while defendant was playing a phonograph, and that said alleged murderer spent the evening of the third day previous to the homicide at defendant's house, was upon material issues raised in the murder trial and it was sufficient upon which to base a charge of perjury.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial. Russ Avery, Judge. Reversed.

The facts are stated in the opinion of the court.

Walters & Mauk for Appellant.

U. S. Webb, Attorney-General, and Erwin W. Widney, Deputy Attorney-General, for Respondent.

CURTIS, J.—The defendant was found guilty of the crime of perjury. On April 19, 1922, in the trial of a criminal action entitled "The People of the State of California *vs.* James Wheaton and Calvin Rowell," in the superior court of the county of Los Angeles, appellant testified on behalf of defendant Wheaton in said action. The defendants Wheaton and Rowell were on trial for the crime of the murder of two policemen of the city of Los Angeles, alleged to have been committed in said city on the night of December 6, 1921, between the hours of 10 and 11 o'clock of said night. The defendant testified in said action that Wheaton, one of said defendants in said action, was at the home of said defendant Patterson in the city of Los Angeles on the night

2. Necessity of allegation of materiality of testimony in prosecution for perjury, note, 124 Am. St. Rep. 665.

What constitutes material testimony as to which charge of perjury may be laid, notes, 3 Ann. Cas. 945; 19 Ann. Cas. 364.

of December 6, 1921, from about the hour of 7 o'clock until
the hour of 11 o'clock of said night.   On the trial of the de-
fendant Patterson for the crime of perjury his testimony,
given in the Wheaton-Rowell case, was introduced in evi-
dence.   The prosecution then called as a witness Harry C.
Hickok.   Hickok testified that he was a police officer and
that he was present at a conversation between the defendant
Patterson and a deputy district attorney of the county of
Los Angeles, which conversation took place shortly after the
arrest of the defendant, on the nineteenth day of April,
1922, immediately following the giving of his testimony in
the Wheaton-Rowell case.   The witness Hickok further testi-
fied that the deputy district attorney on this occasion asked
the defendant Patterson if he realized what a serious situa-
tion he had gotten himself into by testifying before the
superior court, under oath, to facts which he did not believe
to be true; that the deputy district attorney then read to
the defendant purported confessions of Wheaton and Rowell,
in which each stated that on the night of December 6, 1921,
they were present at the scene of the murder and were in
a Ford car with three other men, who killed the two police-
men.   After the witness Hickok had testified to the reading
of these confessions to the defendant by the deputy district
attorney, the prosecution then offered them in evidence, stat-
ing that "They are offered in connection with the statements
made by the defendant and for the light that they throw on
what he subsequently said."   Over the objections of the de-
fendant, the court ruled that the witness Hickok might read
these confessions to the jury as a part of the conversation
between the deputy district attorney and the defendant.
The witness Hickok then read to the jury two purported con-
fessions signed by Wheaton, and one signed by Rowell.
These confessions of Wheaton and Rowell contained state-
ments, which, if true, tended strongly to show that Wheaton
was not at the defendant's home on the evening of December
6, 1921.   After the reading of each of these documents the
defendant moved to strike them out on the ground that they
were not binding upon the defendant and that, as against
him, they were incompetent.   These motions the court de-
nied.

No attempt is made by the attorney-general, in his brief
in this case on behalf of the respondent, to justify the ruling

of the court in permitting these confessions to be read to the jury upon the ground that they were admissible as parts of the conversation had with the defendant. In fact, it would be a difficult matter, from the evidence before us, to justify the admission of these confessions for such purpose. They could not, of course, explain anything said by the defendant prior to their being read to him as there is no evidence that he had any knowledge of their contents before he heard them read. As to explaining statements made by the defendant after the confessions were read to him, they are equally unavailing as the testimony in the case shows that in response to a question made by the deputy district attorney immediately after the reading of the confessions, the defendant stated, "I have told you the truth about it." It is true that the witness Hickok testified that the defendant had said, both before and after the reading of the confessions to him, that he knew he had done wrong and only trouble could come out of it. Just what defendant may have meant by this statement may or may not be apparent, but the confessions shed absolutely no light upon the meaning which the defendant intended to convey by this statement.

It is attempted to justify the reading of these confessions on the ground that they contradicted the testimony of the defendant and showed that he testified falsely. They undoubtedly had this effect upon the jury, and in a marked degree. Between the testimony of defendant that Wheaton was at his home, and the admissions of Wheaton and Rowell that they participated with others in the killing of the two policemen on the night of December 6, 1921, the jury would, in all probability, accept the statements of the latter, and believing that the defendant had falsified in his testimony in this important respect, they would accept with reluctance his evidence in other matters. In other words, the reading of these confessions to the jury tended to impeach the defendant as a witness upon his own trial. The consequences, therefore, to him of the action of the court in permitting the reading of these confessions to the jury were of a most serious nature. This result, however, would not make the confessions competent evidence. Their effect upon the jury would go to their materiality and not to their competency. Their competency as against the defendant would be determined by the well-established rules of evidence. No rule of

evidence is better established or more frequently applied than that which forbids the admission, as against the defendant, of statements or conversations made without his hearing or presence. It is not claimed that the defendant was present at the time Wheaton and Rowell made their purported confessions, nor that the defendant was in any way responsible for the acts or statements of Wheaton and Rowell at any time, nor that he ever knew, before the documents were read to him, that these men had ever made any statements regarding their part in the murder of the two policemen. [1] These confessions, therefore, as against the defendant, were incompetent evidence, and the reading of them to the jury, in our opinion, greatly prejudiced the defendant in his defense. We have already alluded to the serious consequences which, in our opinion, would naturally follow the reading of these confessions to the jury. So serious were these consequences that we feel that the defendant was thereby deprived of his right to a fair and impartial trial, and for this reason the judgment should be reversed.

Outside of these confessions there is no evidence in the case that Wheaton was not at the defendant's house on the night of December 6, 1921, at the time defendant testified in the Wheaton-Rowell case that he was there, and therefore there was no evidence that the defendant had falsified in his testimony as to the whereabouts of Wheaton on this night. The jury undoubtedly, in determining the guilt or innocence of the defendant of the charge of falsely testifying to Wheaton's presence at his house on the night of December 6, 1921, took into consideration the statements contained in the confessions of Wheaton and Rowell. This was greatly to the prejudice of the defendant and furnishes an additional reason why a new trial should be granted defendant on account of the error committed in permitting these confessions to be read to the jury.

The information charges that the defendant falsified in his testimony given in the Wheaton-Rowell case in three particulars: First, when he testified that Wheaton was at the home of defendant on the night of December 6, 1921; second, when he testified that defendant was playing a phonograph on the evening of December 6, 1921, when Wheaton came to his house; and third, when he testified that Wheaton spent the evening of December 3, 1921, at de-

fendant's house. The fact that Wheaton spent the evening of December 3d at defendant's house was brought out on cross-examination presumably for the purpose of testing the recollection of the witness of events transpiring on or about December 6, 1921, and on cross-examination defendant testified that Wheaton spent the evenings of December 3d, 4th, and 5th at defendant's house. Defendant's testimony relative to the playing of the phonograph on the evening of December 6th was substantially as follows: "I was playing the phonograph when the defendant [Wheaton] came in, and was sitting down reading a book. I had commenced playing the phonograph when he came in. The phonograph was playing when he rapped on the door. After we played a piece on the phonograph we played another and then talked awhile." It is now claimed by appellant that his testimony relative to the playing of the phonograph on the evening of December 6th, and that Wheaton spent the evening of December 3d at defendant's house was upon collateral matters in the Wheaton-Rowell case; that this testimony was not material to the charge involved in the Wheaton-Rowell case, and therefore no charge of perjury could be based upon such testimony. The rule upon this subject is given in Ruling Case Law as follows: "While it is necessary that the false testimony be material to the issue being tried or to the point of inquiry, it is not necessary that it be material to the main issue. The test is whether the statement made could have influenced the tribunal on the issue before it. It is sufficient if it is material to any proper matter of inquiry, and is calculated and intended to prop or bolster the testimony of a witness on some material point, or to support or attack the credibility of such a witness. It may be laid down as a general rule that any testimony which is relevant in the trial of a case, whether to the main issue or some collateral issue, is so far material as to render a witness who knowingly and willfully falsifies in giving it guilty of perjury. It is but common knowledge that it frequently occurs in the trial of causes that inquiries are made of witnesses touching matters which do not directly concern the commission of the acts which constitute the offense, yet such inquiries and answers may be material and highly important to the end that the triers of the fact

may properly and intelligently weigh the testimony in the cause. If it is so connected with the matter at issue as to have a legitimate tendency to prove or disprove some fact that is material by giving weight or probability to, or detaching from, the testimony of a witness thereto, it is sufficient and makes the testimony material." (21 R. C. L., p. 259.)

[2] The courts of our own state have expressed this rule in the following language: "The matter sworn to need not be directly and immediately material. It is sufficient if it be so connected with the facts directly in issue as to have a legitimate tendency to prove or disprove such fact, by giving weight or probability to the testimony of a witness testifying thereto or otherwise." (*People* v. *Barry,* 63 Cal. 63; *People* v. *Senegram,* 27 Cal. App. 302 [149 Pac. 786]; *People* v. *Phillips,* 56 Cal. App. 291 [205 Pac. 40].)

[3] Measured by the rule laid down by these authorities we are of the opinion that the testimony of the defendant relative to the playing of the phonograph and to the whereabouts of Wheaton on December 3d were upon material issues raised in the Wheaton-Rowell case, and, therefore, it was sufficient upon which to base a charge of perjury.

For the error in permitting the confessions of Wheaton and Rowell to be read to the jury the judgment and order denying a motion for a new trial are reversed.

Conrey, P. J., and Houser, J., concurred.

A petition by respondent to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on December 24, 1923.

LAWLOR, J., Concurring in Denial of Petition.—I concur in the order denying the petition for a hearing herein solely on the ground that under the rule we are bound by what appears on the face of the opinion. (*Burke* v. *Maze,* 10 Cal. App. 206 [101 Pac. 438, 440].)