[Crim. No. 1021.  Third Appellate District.—May 15, 1928.]

THE PEOPLE, Respondent, v. A. R. ALBERT, Appellant.

E. T. Taylor, Frank M. Carr and Richard Liebman for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

FINCH, P. J.—The information contains four separate charges of perjury. The defendant was convicted of the offenses charged in the first and fourth counts. His motion for a new trial was denied and he was sentenced to imprisonment for both offenses, the terms of imprisonment to run concurrently. This appeal is from the judgment and the order denying a new trial. The respondent admits inability to find any corroboration of the testimony of the prosecuting witness in support of the fourth count and a careful search of the record fails to disclose any corroboration thereof.

The first count alleges that in the trial of the defendant, in November, 1926, upon a charge of grand larceny, he falsely testified that he paid certain moneys for certain sweet potatoes. The testimony given in that case shows that the defendant and C. C. Piccanco had entered into an agreement for the sale of the latter's sweet potatoes to the former, payment to be made for each load thereof as delivered, and that the defendant received eight loads of the potatoes, he hauling them in his own truck from the defendant's home in Stanislaus County to Oakland or San Francisco. Piccanco testified in that case and in this that the defendant did not pay for any of the potatoes, but that he was induced to deliver all but the last load to the

defendant, without requiring immediate payment, by certain representations and promises of the latter. As to the potatoes so delivered, it may be conceded that the defendant was not guilty of larceny under the law as it then stood, the owner having intentionally parted with possession and title. (17 R. C. L. 12.) When the defendant appeared for the purpose of getting the last load of potatoes, Piccanco, according to his testimony, demanded immediate payment for all the potatoes and it was agreed that, after loading the potatoes on defendant's truck, the parties would go to the town of Turlock where the load of potatoes would be weighed and payment would be made for all the potatoes. After the potatoes were so loaded and weighed it was agreed that the parties would meet at a certain poolroom, where the defendant would make payment. Piccanco testified: "He (defendant) started up with full speed. When I got down to the poolroom he was stepping on the gas. . . . He started out as fast as the truck could go through town." Piccanco followed and overtook the defendant, but the latter refused to make payment. A justifiable inference from the evidence is that Piccanco did not intend to surrender control over the last load of potatoes or to part with title thereto until payment therefor by the defendant and that the defendant was guilty of larceny in taking those potatoes under the circumstances shown by the evidence. In the larceny case the defendant testified that he had paid for all of the potatoes from time to time as they were delivered, except the last load; that the reason he did not pay for that load was "because he (Piccanco) give me two loads of potatoes, small, black, decayed, and I couldn't sell them in Oakland, and I want him to pay for those two loads of potatoes before I pay him."

From the testimony quoted it clearly appears that the alleged false testimony was material. The defendant's explanation of his reason for refusing to pay for the last load of potatoes is wholly without force if he had made no payments on account of potatoes theretofore delivered to him, because, under such circumstances, Piccanco was under no obligation to pay or repay any money to the defendant and, therefore, there was no reason for withholding payment for the last load. The false testimony need not be directly material. It is sufficient if it is circumstantially

material, the degree of materiality being unimportant. (*In re Braynard,* 52 Cal. App. 631, 634 [199 Pac. 576]; *People* v. *Phillips,* 56 Cal. App. 291, 293 [205 Pac. 40]; *People* v. *Dunstan,* 59 Cal. App. 574, 584 [211 Pac. 813; *People* v. *Patterson,* 64 Cal. App. 223, 229 [221 Pac. 394].)

■ Appellant contends that there is no corroboration of Piccanco's testimony to the effect that the defendant did not pay for any of the potatoes. Both Piccanco and the defendant testified that immediately after the last load of potatoes had been weighed, as stated, the defendant made out and delivered to Piccanco a written statement, which was admitted in evidence, showing the net weight of each load of potatoes and the aggregate weight thereof. From the computations set forth in the statement it appears that 22,785 pounds of potatoes were to be paid for at three and one-half cents a pound, amounting to $797.47, and 5,620 pounds at three cents, amounting to $168.60. These two sums are then added together, showing a total of $966.07. No credit for any payments appears in the statement. It is highly improbable that the defendant would have given Piccanco this statement without inserting therein any credits for payments made, if any. A witness testified that she took down in shorthand certain statements made by defendant in a justice's court, after the delivery of the potatoes, in which the following occurred: "Q. He (Piccanco) claims you owe him about $900, doesn't he? A. I never denied it." Another witness testified that at a time when nearly all the potatoes had been delivered Piccanco asked the defendant "if he had the money to pay for the . . . potatoes," and that the defendant replied, "Yes, I be back tomorrow. I bring the tags back. I straight up all the potatoes with you." The foregoing evidence tends to prove the falsity of the defendant's testimony to the effect that he had paid for all but the last load of the potatoes and must be held to be sufficient corroboration of Piccanco's testimony. (*People* v. *Follette,* 74 Cal. App. 178, 204 [240 Pac. 502].)

■ Complaint is made of the language italicized herein contained in an instruction of the court, reading in part as follows:

"As regards proving the falsity of such testimony the court instructs the jury that while that fact cannot be established by the testimony of one witness alone, *it is not*

*absolutely necessary that it be established by the testimony of two witnesses; It may be proved by the testimony of one witness and other corroborating facts or circumstances corroborating such witness;* provided, the jury are satisfied beyond a reasonable doubt from the testimony of said witness and such corroborating facts and circumstances that such testimony was willfully false in fact." The instruction substantially states the rule prescribed by section 1103a of the Penal Code, which reads as follows: "A perjury must be proved by the testimony of two witnesses, or of one witness and corroborating circumstances." In view of the context, it would be hypercritical to hold that the jurors may have understood the instruction to mean that the corroborating facts and circumstances need not tend to prove the falsity of the alleged testimony or that it was sufficient if there was corroboration of other parts of Piccanco's testimony which did not relate to such falsity. If the defendant desired fuller or more explicit instructions on the subject he should have requested them. It is generally sufficient, in the absence of such a request, to instruct the jury in the language of the statute.

The judgment and the order denying a new trial are reversed in so far as they relate to the fourth count and affirmed as to the first count in the information.

Bartlett, J., *pro tem.,* and Plummer, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 12, 1928.

All the Justices present concurred.