STATE, RESPONDENT, *v.* HALL, APPELLANT.

(No. 6,688.)

(Submitted October 2, 1930. Decided October 27, 1930.)

[292 Pac. 734.]

*Messrs. Arnot & Doyle,* for Appellant, submitted a brief; *Mr. D. W. Doyle* argued the cause orally.

*Mr. L. A. Foot,* Attorney General, and *Mr. T. H. Mac-Donald,* Assistant Attorney General, for the State, submitted a brief; *Mr. L. V. Ketter,* Assistant Attorney General, argued the cause orally.

300

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

The defendant has appealed from a judgment convicting him of perjury and from an order denying his motion for a new trial. The perjury is alleged to have been committed by giving false testimony in the separate trial of Billedeaux, in the case of *State of Montana* v. *Bostwick and Billedeaux,* in

which Bostwick and Billedeaux were accused of the crime of murdering Joe Monroe.

The specific evidence given by the defendant Hall which is alleged to be false is that he (the defendant Hall) testified that he "did not arrive in the town of Browning, county of Glacier, state of Montana, until about 9:30 o'clock in the evening on the 18th day of September, 1929." The information further alleges that "in truth and in fact the said Johnson Hall arrived in the said town of Browning, county of Glacier, Montana, about 5:00 o'clock on the evening of the 18th day of September, 1929." It is averred in the information "that the testimony as given as aforesaid by the said Johnson Hall was material in the case of *State of Montana* v. *John Bostwick and Florabelle Billedeaux*, wherein Florabelle Billedeaux, one of the defendants, was then and there on trial. It was material to know whether the said Johnson Hall arrived at the town of Browning of Glacier county, Montana, about 5:00 o'clock in the evening of the 18th day of September, 1929." To show the testimony given by defendant Hall in the Billedeaux trial and its alleged materiality, much, if not all, of the evidence given in that action was introduced in this case.

The record shows that evidence was introduced in the case of *State* v. *Billedeaux* showing that Joe Monroe was shot, in Browning, on September 17, 1929, and died a few days thereafter as a result of the wounds. From the state's witnesses in that case it is not altogether clear whether Bostwick or Billedeaux did the actual shooting. According to state's witnesses Charlie Powell and Elden Powell, Bostwick made a statement in the presence of Florabelle Billedeaux to the effect that he had killed Joe Monroe, and Florabelle Billedeaux thereupon insisted that she had done it, that she had shot him. But, regardless of who did the actual shooting, there was evidence in that case tending to show that Florabelle Billedeaux was present when the shooting occurred and aided and abetted in its commission.

Soon after the shooting, Bostwick and Billedeaux gave the gun to Charles Powell and later secured it from him. In an effort to show that Florabelle Billedeaux was instrumental in disposing of the gun, the state introduced evidence that on the eighteenth day of September, 1929, the day after the shooting, Billedeaux, Bostwick and Annie Cobell went from Browning to Blackfoot in an automobile driven by Billedeaux; Bostwick stopped at Blackfoot, and the defendant here got in the car at Blackfoot and went with Billedeaux and Annie Cobell to Cut Bank. It was on this trip that the gun was claimed to have been disposed of, and it is the testimony of Hall concerning this trip that gave rise to the perjury charge.

Annie Cobell, the state's witness in the Billedeaux trial, testified that on the way from Blackfoot to Cut Bank they stopped at a ranch about five miles west of Cut Bank, known as Slim Brown's ranch, and while there Billedeaux took a gun from the pocket of the door of the car and gave it to Chester Brown; that Chester Brown went into the house, then returned to the car, and went with them to Cut Bank; that they stayed in Cut Bank only a short time and then returned to Browning, arriving at about 5:30 in the afternoon. Billedeaux and Chester Brown denied that a gun was given to the latter as stated by Annie Cobell, and said that Brown did not go to Cut Bank, and that they did not stop at the Brown ranch until returning from Cut Bank, at which time Chester Brown joined them and went to Browning, leaving Johnson Hall at Blackfoot on the way to Browning.

Johnson Hall, the defendant here, testified in that case that he did not think they drove to the Slim Brown ranch on the way to Cut Bank, but that they drove there on the return from Cut Bank. He said he did not see Billedeaux give a gun to Chester Brown. He also testified that he got out of the car at Blackfoot. The following is a portion of his testimony, given on cross-examination:

"You say that you got out of the car at Blackfoot, at Bostwick's place? A. Yes.

"Q. And the car went on to Browning? A. I guess that is where they went. I don't know where they went after that, but it was going.

"Q. Isn't it a fact that on the occasion of your return from Cut Bank that you did not stop at Blackfoot at all, and that you rode with Florabelle Billedeaux, Annie Cobell and Chester Brown in this car to Browning, and you got off at Browning? A. I got off at Blackfoot on the way back.

"Q. You say that later that evening you went to Browning? A. Yes.

"Q. With whom? A. Matt Lytle.

"Q. How late in the evening? A. Oh, about nine thirty, somewhere around there. I wouldn't say exactly what time it was."

Jesse Brown, deputy sheriff of Glacier county and state's witness in this case, testified that on the eighteenth day of September, 1929, he arrested defendant Hall at Browning between 4:30 and 5 o'clock; that he took him before Judge Portman, a justice of the peace, at about 5 o'clock. Justice Portman testified that he was brought before him in Browning at 5 o'clock on September 18.

Defendant contends that the question of when he arrived in Browning on September 18 was immaterial in the trial of Billedeaux, and that therefore his evidence in relation thereto cannot form the basis of a charge of perjury.

Perjury is defined by our statute as follows: "Every person who, having taken an oath that he will testify, declare, depose, or certify truly before any competent tribunal, officer, or person, in any of the cases in which an oath may by law be administered, wilfully and contrary to such oath, states as true any material matter which he knows to be false, is guilty of perjury." (Sec. 10878, Rev. Codes 1921.) Hence it will be seen that the giving of false testimony does not constitute perjury under the laws of this state unless the testimony is of material matter. This is the prevailing rule elsewhere. (*People* v. *Brill*, 100 Misc. Rep. 92, 165 N. Y. Supp. 65; *State* v. *Dineen*, 203 Mo. 628, 102 S. W. 480; *Campbell* v.

*State*, 104 Tex. Cr. Rep. 596, 285 S. W. 820; *Bledsoe* v. *State*, 64 Ark. 474, 42 S. W. 899; *People* v. *Perazzo*, 64 Cal. 106, 28 Pac. 62; *Shevalier* v. *State*, 85 Neb. 366, 19 Ann. Cas. 361, 123 N. W. 424; *State* v. *Hathaway*, 2 Nott & McC. (S. C.) 118, 10 Am. Dec. 580.)

It should be noted that, under the evidence in the Bille- deaux trial, nothing transpired in Browning on September 18 that had anything to do with the murder of Joe Monroe on September 17. The time when Johnson Hall arrived in Browning on September 18 had nothing to do with the main issue in the case.

It may be conceded that the testimony relating to the passing of the gun from Billedeaux to Brown on that trip was a material issue. Also it may be conceded that the general rule is that anything so connected with the matter at issue as to have a legitimate tendency to prove or disprove some material issue by giving weight or probability to, or detaching from, the testimony of a witness, is material (21 R. C. L. 259), and that, if evidence is circumstantially material, it is sufficient to sustain a perjury charge (48 C. J. 833).

The state contends that the alleged false testimony of this defendant tended to impeach the testimony of Annie Cobell in the Billedeaux trial, and hence tended to disprove material facts testified to by her, and for that reason his testimony was material matter. Annie Cobell, it will be remembered, testified that Johnson Hall returned to Browning with her in the car driven by Billedeaux. Hall asserted that he got off at Blackfoot. The issue between these two witnesses on this feature of the case did not center around the time when Hall reached Browning, but rather whether he went there in the Billedeaux car with Annie Cobell, Florabelle Billedeaux, and Chester Brown. The information in this case did not charge Hall with perjury for falsely swearing that he got off at Blackfoot, or for stating that he did not go to Browning in the Billedeaux car. The perjury charge is not predicated upon the method or means used by Hall in getting to Browning, but is based upon the time of his arrival there.

There is nothing in the record showing that any witness in the Billedeaux trial testified directly as to the time when defendant, Johnson Hall, first arrived in Browning on the eighteenth day of September. In fact, the evidence relating to the exact time when the defendant reached Browning on September 18 is unsatisfactory. In the *Billedeaux Case,* Annie Cobell testified that he went there with her and that she arrived in Browning at about 5:30 o'clock on the evening of September 18. On cross-examination, she said she knew it was 5:30 because, as she said, "I looked at the time when I got to Browning, when I went into the cafe." But Jesse Brown, state's witness in this case, testified that he arrested Johnson Hall in Browning between 4:30 and 5 o'clock and took him before the justice of the peace at 5 o'clock to answer a misdemeanor charge. Obviously, then, if Annie Cobell arrived in Browning at 5:30, as she said she did, Hall could not have gone there with her in the Billedeaux car, for he was already there before she arrived.

The defendant, Hall, in this case explains that he must have caught a car from Blackfoot to Browning on the afternoon of September 18, after returning to Blackfoot from Cut Bank, as there are cars running back and forth between Browning and Blackfoot. He says he later caught a ride from Browning to Blackfoot, and still insists that his testimony in the *Billedeaux Case* was correct to the effect that Matt Lytle took him from Blackfoot to Browning between 9 and 10 o'clock in the evening.

But, conceding that Hall's testimony to the effect that he got off at Blackfoot and later, and at about 9:30 in the evening, went to Browning with Matt Lytle, is equivalent to saying that he did not arrive in the town of Browning until about 9:30 in the evening of the 18th of September, as charged in the information, still we believe it related to a matter ▮▮ wholly immaterial in the Billedeaux trial. The fact that testimony conflicts with that of another witness who testified to a material matter does not make the evidence material when otherwise immaterial. A witness may not be impeached

by contradicting him upon collateral or immaterial matters. (27 Cal. Jur. 146; 28 R. C. L. 620; 40 Cyc. 2591.) And it is false testimony as to material matters only that authorizes the jury, under proper instructions, to distrust the balance of the witness' testimony unless properly corroborated. (*Vande Veegaete* v. *Vande Veegaete*, 75 Mont. 52, 243 Pac. 1082, and cases cited; *State* v. *Phipps*, (Nev.) 282 Pac. 1024.)

The case of *People* v. *Patterson*, 64 Cal. App. 223, 221 Pac. 394, is relied upon by the state. In that case, Patterson was a witness for the defendant Wheaton, who had been tried for murder committed December 6, between the hours of 10 and 11 P. M. Patterson, in an effort to prove an alibi for Wheaton, testified that Wheaton was at the home of Patterson between 7 and 11 o'clock that night, that he was playing a phonograph when Wheaton arrived there. On cross-examination, he also testified, in response to questions put to him to test his recollection, that Wheaton spent the evenings of December 3, 4 and 5 at the home of the witness. Patterson was charged with perjury in the three following particulars: First, when he testified that Wheaton was at the home of the witness on the night of December 6; second, when he testified that he was playing a phonograph when Wheaton arrived; and, third, when he testified that Wheaton spent the evening of December 3 at the witness' house. The court held that these statements were upon material issues in the murder case and sufficient upon which to base a charge of perjury.

We think that case involved a principle not applicable here. In the murder trial in which the perjured testimony was given in that case, the defense was an alibi. If the defendant in the murder case was at the home of the witness on December 6 during the time stated, he could not have committed the murder. The testimony of Patterson to the effect that Wheaton was at the home of the witness on the evening of the 6th of December, at the hour when the murder was alleged to have taken place, was obviously a material matter. His statement that he was playing a phonograph when Wheaton arrived was so connected with the main issue as to have a tendency to

prove, or lend probability to the testimony of the witness on, the main fact that Wheaton was there at the time stated. The statement that Wheaton was at the house of the witness on the evening of December 3 was likewise material, because it tended to show the relationship between the witness and Wheaton, and tended to bolster the testimony of the witness on the main issue, by showing the probability of Wheaton being at Patterson's house on the evening of the 6th of December.

Had the issue in the *Billedeaux Case* revolved around the point as to whether Hall was present at the Brown ranch when the gun was passed, evidence as to his being in the car at other points on the trip and the time of arrival at each point might have been material as having a tendency to prove the main issue—that of his presence at the Brown ranch when the gun was passed. But that was not the issue in that case. Defendant, Hall, admitted in his testimony in the murder trial that he was in the car at the time when the gun was claimed by Annie Cobell to have been given by Billedeaux to Brown. The particular time when he arrived in Browning had nothing to do with the main issue—i. e., the delivery of the gun by Billedeaux to Brown at the Brown ranch—and had no tendency to prove or disprove the main fact. The time when defendant, Hall, arrived in Browning on the 18th of September being wholly immaterial in the *Billedeaux Case*, the evidence does not sustain the charge of perjury.

It is contended that defendant ought not to be at liberty to deny certain details of the trip falsely and still be immune from prosecution for perjury. As above noted, under our laws one of the essential ingredients of the crime of perjury is that the false testimony shall be of material matter. The wisdom of the legislation is for legislative determination. As was stated by Judge Werner, speaking for the court in *People* v. *Teal,* 196 N. Y. 372, 17 Ann. Cas. 1175, 25 L. R. A. (n. s.) 120, 89 N. E. 1086, 1088: "It is suggested that this is a narrow and technical view of the question, which will permit to go unpunished many who are as morally cul-

pable as though the false testimony given or solicited by them were actually material to an issue in existence when the false testimony is given or solicited. There are several answers to this intimation. We read the statute as we find it. If it is ever deemed wise to take out of the statute defining perjury the element of materiality in the false testimony given, suborned, or solicited, that should be done by legislative enactment, and not by judicial construction.''

While we are not willing to subscribe to everything said in *State* v. *Hathaway*, supra, we agree with that part wherein it was said: ''There can be no doubt, but that an extrajudicial oath, or one relating to a matter utterly immaterial, or even an impious oath, taken in idle conversation, may be as offensive in the eye of Heaven, as the most solemn oath taken in a court of justice. But there are many offenses against morality and religion, which are not cognizable in courts of justice. For such offense, a man is answerable only to his God, and not to the laws of his country. And our duty is to determine what the law considers a public offense, and not to declare what ought to be so considered.''

The evidence being insufficient to show that the testimony of defendant was that of a material matter in the Billedeaux trial, the conviction of perjury cannot stand.

The judgment is accordingly reversed and the cause remanded, with directions to dismiss the action and discharge the defendant.

Mr. Chief Justice Callaway and Mr. Justice Ford concur.

Associate Justices Matthews and Galen, being absent, did not hear the argument and take no part in the foregoing opinion.