No. 13476

IN THE SUPREME COURT OF THE STATE OF MONTANA

1977

---

THE STATE OF MONTANA,

Plaintiff and Appellant,

-vs-

JACK M. SCANLON,

Defendant and Respondent.

---

Appeal from: District Court of the First Judicial District,
Honorable Gordon R.Bennett, Judge presiding.

Counsel of Record:

For Appellant:

Hon. Mike Greely, Attorney General, Helena, Montana
Robert Keller, Special Assistant Attorney General,
argued, Helena, Montana

For Respondent:

Donald Garrity argued, Helena, Montana

---

Submitted: February 23, 1977

Decided: AUG 24 1977

Filed: AUG 24 1977

THOMAS J. KEARNEY
—————————————————————————
Clerk

Mr. Justice Daniel J. Shea delivered the Opinion of the Court.

This case involves proceedings before a grand jury in Lewis and Clark County in which the defendant was indicted on 18 counts of perjury relating to his testimony before the grand jury as to how his clients who had industrial accident claims came to him. In State v. Scanlon, 33 St.Rep. 1355 (December 30, 1976), this Court affirmed the dismissal of 16 of the 18 counts by the district court, but ordered a trial on two of the counts (counts 9 and 10). Thereafter, defendant petitioned for a rehearing, and the state petitioned for a rehearing, the thrust of both was that the defendant and the state requested a dismissal of all 18 counts of perjury. This Court granted the petitions for rehearing.

As part of the grand jury investigation into the handling of industrial accident claims by the Industrial Accident Board and by attorneys in Montana, the grand jury called defendant to testify as to how the attorney-client relationship was initiated. The purpose of this inquiry was to determine if there were leaks from the Industrial Accident Board to certain lawyers in Montana concerning persons in Montana who had filed industrial accident claims with the Board. The focus was whether anyone within the Industrial Accident Board either referred claimants to the defendant or whether they provided him with names of claimants who would be potential clients.

When he was first called to testify before the grand jury, defendant refused to answer questions asked him, asserting his right against self-incrimination. Thereafter, in an effort to find how defendant acquired his clients, the grand jury granted immunity against prosecution to the defendant except prosecution for contempt and perjury. For two days defendant testified before the grand jury, and denied he solicited his clients and explained how

they became his clients. As a result of this testimony the grand jury indicted defendant on 18 counts of perjury.

The district court dismissed each of the 18 counts based either on lack of direct evidence as to the falsity of the statement, lack of corroboration as to the falsity of the statement, or lack of materiality.

Several of the counts against defendant arose out of transactions where defendant testified the clients were referred to him by an uncle and aunt, Mr. and Mrs. Richard Mullins, or by Mr. and Mrs. Herman Myers, long-time family friends. At the time of his testimony before the grand jury, all of these persons had died. The clients who appeared before the grand jury denied ever knowing any of the people named. The district court dismissed these counts for lack of direct evidence as to the falsity. These dismissals were proper. These counts were not supported by direct evidence of the falsity of the defendant's statements.

This appeal concerns the evidentiary standard required for the proof of perjury, which essentially revolves around three statutes.

Section 94-7-202(7), R.C.M. 1947, provides:

"No person shall be convicted of an offense under this section where proof of falsity rests solely upon the testimony of a single person other than the defendant."

Section 93-401-1, R.C.M. 1947, provides:

"The direct evidence of one witness who is entitled to full credit is sufficient for proof of any fact, except perjury and treason."

Section 93-1401-2, R.C.M. 1947, provides:

"Perjury and treason must be proved by testimony of more than one witness; treason by the testimony of two witnesses to the same overt act; and perjury by the testimony of two witnesses, or one witness and corrob-orating circumstances." (Emphasis added.)

The basis for unusually stringent evidence requirements is set out in an article in 19 UCLA Law Review 638, 642, 643 entitled

"Perjury and Related Offenses Under the Proposed California Criminal Code." That same article points out at p. 645, that Tentative Draft No. 6 of the Model Penal Code on this point reads:

> "Corroboration. Proof of guilt beyond a reasonable doubt shall suffice for conviction under this section as in other criminal cases, without special requirement of two witnesses or corroborating circumstances.
>
> "[Alternate, rejected by the council: No person shall be convicted of an offense under this Section where proof of falsity rests solely upon contradiction by testimony of a person other than the defendant.]"

The official draft of the Model Penal Code, which served as the basis for section 94-7-202(7), R.C.M. 1947, used the alternate provision. In Montana Criminal Code, 1973, Annotated, Prof. William F. Crowley - Editor, at page 293 the annotator points out:

> "The common law rule that falsehood be established by two witnesses is adopted in part by subsection (7). At the common law this rule was adopted to deal with the problem of an oath against an oath. The modern rationale is a policy determination based on a balancing of the need for protection of witness and the need to maintain the sanctions for false testimony. In adopting the requirement of more than one witness Montana has followed the majority of states in affording additional protection to the witness at the possible cost of being unable to convict an apparent perjurer. * * * "

As noted above, the standard of proof required in Montana under the new code section 94-7-202(7), R.C.M. 1947, requires that the proof of the falsity of a statement must be more than the contradiction testimony of a person other than the defendant. The legislature recently made this policy determination and despite the contrary rule urged by the state, this is the rule in Montana.

The exact requirements of this evidentiary rule in perjury cases are apparent from an examination of the California cases interpreting the section of the California Civil Code, identical to Montana's section 93-1401-2, R.C.M. 1947. In an article entitled "Proof of Perjury: The Two Witness Requirement", 35 Southern California Law Review 86, 97, it is stated:

"In summary, the California attitude is, and remains, that direct testimony of at least one witness must always be introduced to prove the falsity of the statement set forth in the indictment; circumstantial evidence alone will not support a perjury conviction."

In People v. Roubus, 53 Cal.Rptr. 281, 417 P.2d 865, 866, 867, the California Supreme Court, sitting In Bank, outlined this evidentiary requirement:

"Perjury must be proved by the testimony of two witnesses, or of one witness and corroborating circumstances. * * * This statutory provision has been interpreted as prescribing not only the amount but also the kind of evidence necessary to support a perjury conviction. * * * Direct, as distinguished from circumstantial, evidence of the falsity of the defendant's testimony by at least one witness is generally required. * * * This does not mean that there must be a denial in the very words of the defendant's testimony * * * but that there must be testimony by at least one witness furnishing direct evidence of facts contrary to, or absolutely incompatible or physically inconsistent with, that sworn to by the accused * * *. Evidence that establishes facts from which the falsity of an alleged perjured statement may or may not be inferred is insufficient under the direct evidence rule.* * *

"The rule requiring proof of falsity by direct evidence has been criticized. * * * However, this requirement was early established in this state by decisions construing our statutory provision. It is noteworthy that a majority of jurisdictions which apply the rule that falsity must be proved by the testimony of two witnesses, or of one witness and corroborating circumstances, hold that circumstantial evidence alone is generally insufficient to establish falsity."

An early Montana case indicates this is the law in Montana as well. In State v. Gibbs, 10 Mont. 213, 219, 25 P. 289, it is said:

"'It is not necessary that there should be two living witnesses in contradiction of the statement of the defendant to justify a conviction of perjury. It is sufficient if, in addition to one directly opposing witness, corroborating circumstances sufficient to turn the scale and overcome the oath of the defendant and the legal presumption of his innocence are proved.'"

The Court in Gibbs approved this instruction as to proof of perjury:

> "' * * * that such act of perjury has been estab-
> lished to your satisfaction beyond a reasonable
> doubt by more than one witness, or that the testi-
> mony of such witness has been corroborated upon
> that point by other facts and circumstances proved
> on the trial. In other words, the direct evidence
> of one witness alone is not sufficient to convict
> of the crime of perjury, unless corroborated by
> other facts and circumstances proved on the trial.'"

In _Gibbs_ the Court was construing the then equivalent code section

to section 93-401-1, R.C.M. 1947. Section 93-1401-2 had not been

enacted at that time. In State v. Jackson, 88 Mont. 420, 293 P.

309, the Court cited _Gibbs_ as authority of the requirement that

perjury must be proved by the testimony of two witnesses, or one

witness and corroborating circumstances indicating that this was

the law even prior to the passage of section 93-1401-2, R.C.M. 1947.

A subsidiary question to be determined regards the nature

of the corroborating circumstances that must be proved. The rule

in California, that the state argues we should adopt, is stated in

People v. Casanova, 54 Cal.App. 439, 202 P. 45, 47:

> "* * * The statute respecting the quantum of
> evidence necessary in perjury cases will be
> satisfied, if there be the testimony of one
> witness to facts that are absolutely incompatible
> with the innocence of the accused, corroborated
> by circumstances which, of themselves and inde-
> pendently of such directly inculpatory evidence,
> tend, with a reasonable degree of certitude, to
> show that the accused is guilty as charged."

See also: People v. Pustau, 39 C.A.2d 407, 103 P.2d 224, 228.

In _Gibbs_ the Court said that "corroborating circumstances

sufficient to turn the scale and overcome the oath of the defendant

and the legal presumption of his innocence" are all that is required.

In People v. Todd, 9 C.A.2d 237, 49 P.2d 611, 614, it is pointed out:

> "It is also well settled that motive and design to
> commit a crime, if proved, may be considered a
> guilty circumstance * * * and consequently may serve
> legally as corroborative evidence; and in this be-
> half it has been repeatedly held that where, as
> here, it is claimed that several offenses have been
> committed as part of one scheme or plan, all of the
> same general character, tending to the same common
> end, evidence thereof may be received to show the

-6-

process or motive and design to commit the
particular offense with which the accused is
charged, and as tending to show logically that
the particular offense for which he is being
tried was part of such common scheme."

The second issue involves the requirement that the alleged
perjured statement be material. The Montana statute, section 94-7-202(3), R.C.M. 1947, provides:

"Falsification is material, regardless of the
admissibility of the statement under rules of
evidence, if it could have affected the course or
outcome of the proceeding. It is no defense that
the declarant mistakenly believed the falsification
to be immaterial. Whether a falsification is material
in a given factual situation is a question of law."

The Commission Comment points out:

"The proposed definition of 'materiality' in sub-
section (3) does not differ substantially from that
given by prior law."

In State v. Hall, 88 Mont. 297, 304, 292 P. 734, the Court
said:

" * * * Also it may be conceded that the general
rule is that anything so connected with the matter
at issue as to have a legitimate tendency to prove
or disprove some material issue by giving weight or
probability to, or detracting from, the testimony
of a witness, is material * * * and that, if evi-
dence is circumstantially material, it is sufficient
to sustain a perjury charge."

The test for materiality as set out by the statute is not particularly
difficult to meet, it requires only that in the actual factual situa-
tion involved would it be reasonable to find that the defendant's
statement, if believed, could have altered the course of the inves-
tigation.

The grand jury statute, section 95-1408(c), R.C.M. 1947,
provides:

"The grand jury shall find an indictment when all
the evidence before it, taken together, if unex-
plained or uncontradicted, would, in its judgment,
warrant a conviction by a trial jury."

While it is the right of the grand jury to return an indictment, it
is, nevertheless, the duty of the courts to determine if there was

the required minimum evidence to prove each of the elements of the of the charge of perjury. Both sides conceded here that there was no more evidence which could go before a trial jury than what the grand jury had already heard. Accordingly, this is not a situation where the indictment is faulty but where the defendant can be re-indicted. Rather, it is a situation where if the indictment is faulty, the defendant cannot again be indicted because there is no other evidence to present to the grand jury.

This Court has carefully reviewed all counts and conclude that all counts were properly dismissed. Sixteen of the 18 counts were situations where they were not supported by direct evidence of the falsity of defendant's statements. However, counts 9 and 10 deserve more attention in discussing our reasons for their dismissal.

The two charges are summarized as follows:

A summary of count 9 charges that Jack M. Scanlon, falsely testified that Grace A. Rieker first contacted him on the telephone, when in truth and fact he knew that he had instigated the telephone conversation with claimant for the purpose of initiating a client-attorney relationship; and that he so testified to deceive and frustrate the grand jury in its investigation contrary to section 94-7-202, R.C.M. 1947.

A summary of count 10 charges that defendant falsely testified that prior to the telephone call from claimant he had never heard of the claimant nor the fact that she was injured, while in truth and fact he knew the claimant and that she had been injured prior to ever talking to her, and he so testified for the purpose of deceiving and frustrating the grand jury contrary to section 94-7-202, R.C.M. 1947.

The gist of count 9 is the contradictory statements of attorney Scanlon and Mrs. Rieker as to who called the other first. Scanlon claims she called him first and she claims that Scanlon

called her first.  A determination must be made whether attorney Scanlon's testimony, if false, was material to the grand jury investigation; that is, would it be reasonable to find that the defendant's statement, if believed, could have altered the course of the investigation.  Section 94-7-202(3), R.C.M. 1947, provides that " * * * Whether a falsification is material in a given factual situation is a question of law."  Accordingly, we must determine if the testimony was material.  We conclude that it was not.

The focus of the grand jury inquiry was to determine if there were any personnel within the Industrial Accident Board who were leaking information concerning claimants' cases to certain attorneys. The testimony elicited from Mr. and Mrs. Rieker and from attorney Scanlon must be weighed in light of this inquiry:  Was anyone within the Industrial Accident Board referring claimants to attorney Scanlon, or were they providing him with the names of potential clients?

The testimony centers around Mrs. Rieker, a secretary-receptionist at the Boulder River School in Boulder; Ron Fuller, the principal of Jefferson County High School in Boulder; and attorney Scanlon.  Fuller and Scanlon are close personal friends dating back to high school days.  Fuller and Mrs. Rieker were casual acquaintances in Boulder.  Mrs. Rieker's industrial accident claim occurred at the school when she slipped on the steps and sustained back or neck injuries.  Fuller had no connection with the Industrial Accident Board which handled claims sustained by injured workers.

Mrs. Rieker testified that it was Ron Fuller, and him alone, who twice suggested that she obtain a lawyer to handle her claim. On the first occasion she claims Fuller told her she should see a lawyer, and he would help her get one.  On the second contact made by Fuller she claims that Fuller telephoned her and asked her

if she would like to talk to attorney Scanlon who was with Fuller at the time. She claims she did talk to Scanlon and he later came over to her house to discuss her case.

There was no evidence that Mrs. Rieker became a client of Scanlon as a result of inside contacts Scanlon had with the Industrial Accident Board. There was no evidence that personnel of the Industrial Accident Board were referring possible clients to Scanlon or providing him with the names of potential clients. After Mrs. Rieker testified that it was Fuller who furnished the contact with attorney Scanlon, there was simply no evidence that personnel of the Industrial Accident Board had leaked information concerning Mrs. Rieker to attorney Scanlon. However, when Scanlon was later called before the grand jury, they wanted to know who had first done the contacting. Did Mrs. Rieker contact attorney Scanlon first or did Scanlon contact her first?

Regardless of the answer given to this question by Scanlon, it would not have affected the outcome of the proceedings or misled the grand jury in its investigation into possible leaks from the Industrial Accident Board. If they chose to believe Mrs. Rieker, they could conclude that Fuller telephoned her on behalf of attorney Scanlon and then put Scanlon on the phone to talk to her about her accident claim. If they chose to believe Scanlon they could conclude that Mrs. Rieker went to him on her own volition and that he could not recall how she happened to call him as an attorney. Neither conclusion suggests a leak to Scanlon from the Industrial Accident Board. It is clear that Scanlon's testimony was not material to the grand jury's inquiry.

Count 9 must be dismissed for yet another reason. Mrs. Rieker's testimony that attorney Scanlon called her first was not corroborated by admissible evidence. There was only the direct testimony of Mrs. Rieker that Scanlon called her first. The only

attempted corroboration was testimony from Mrs. Rieker's husband that his wife told him that attorney Scanlon had called. It is manifest that section 93-1401-2, R.C.M. 1947, which sets out the requirement of corroboration, contemplates only admissible corroboration. Here, the testimony was not admissible because it was hearsay and because it attempted to obtain corroboration from the same witness who was the source of the direct evidence.

In State v. Newman, 162 Mont. 450, 457, 513 P.2d 258, we defined hearsay as follows:

> " * * * 'Hearsay' is testimony or evidence of someone's words or conduct outside the court, when offered in court to prove the truth of the thing being asserted, and thus resting for its value upon the credibility of the out-of-court asserter."

Here, the state attempted to use the statement made by Mrs. Rieker to her husband to prove that Scanlon had actually called Mrs. Rieker on the telephone. Its credibility rested not on Mr. Rieker but on Mrs. Rieker. This plainly is hearsay.

The vice of this kind of evidence is even more apparent when considered in relation to the kind of proof needed for a prima facie case of perjury. To allow the testimony of Mr. Rieker as corroboration would be to fly in the face of Montana statutes requiring corroboration. Section 93-401-1, R.C.M. 1947, provides that the direct testimony of one person is not sufficient to prove the crime of perjury. Section 93-1401-2, R.C.M. 1947, requires that " * * * perjury [must be proved] by the testimony of two witnesses, <u>or one witness and corroborating circumstances</u>." (Emphasis and bracketed material added.) Mrs. Rieker was the only person who testified directly that attorney Scanlon had called her first and so there was a need for corroborating circumstances.

To be admissible, the corroborative evidence must be independent of the testimony of the same witness who is the source of the direct evidence. See, for example, United States v. Freedman, 445 F.2d 1220 (2nd Cir. 1971); United States v. Thompson, 379 F.2d

625 (6th Cir. 1967) and United States v. Rose, 215 F.2d 617 (3rd Cir. 1954), which cases engraft a requirement of corroboration onto the federal perjury statute. Here, the grand jury had to rely on the direct testimony of Mrs. Rieker that attorney Scanlon had called her first, but also, for corroboration, it had to rely on her indirect testimony by virtue of her husband testifying to what she told him. What Mrs. Rieker told her husband is not corroboration under the perjury statute.

For these reasons count 9 must be dismissed.

Count 10 concerns the nature of the proof required for a charge of perjury, specifically, the requirement of direct evidence. The gist of count 10 concerns a conflict as to whether attorney Scanlon knew of Mrs. Rieker's compensation/before the first time he talked to her about the case. Scanlon claims he did not; Mrs. Rieker claims he did. Regardless of who is right, there is no direct evidence as required by section 93-1401-2 to establish a prima facie case.

The only evidence concerning attorney Scanlon's prior knowledge of Mrs. Rieker's claim came from Mr. and Mrs. Rieker. They testified Scanlon told them he knew of Mrs. Rieker's claim before he talked to her on the telephone. However, this is not direct evidence. Rather, under section 93-301-10, R.C.M. 1947, it is indirect evidence. That section provides:

> "Indirect evidence is that which tends to establish the fact in dispute by proving another, and which, though true, does not of itself conclusively establish that fact, but which affords an inference or presumption of its existence. For example, a witness proves an admission of the party to the fact in dispute. This proves a fact from which the fact in dispute is inferred."

Under this statute any statement made to them by Scanlon is in the nature of an admission and, therefore, is indirect evidence of the fact sought to be proved. The result is that there is no direct evidence to sustain a prima facie case of perjury as required by

-12-

sections 93-401-1 and 93-1401-2, R.C.M. 1947. There being no direct evidence, count 10 must also be dismissed.

Defendant has raised other issues in his petition for rehearing, but in light of our holding, we find no need to discuss them.

Counts 9 and 10 are ordered dismissed and the dismissal order of the district court is affirmed in its entirety.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

-13-

Mr. Justice John Conway Harrison dissenting:

I dissent. As the author of the earlier 4-1 opinion of this Court from which this rehearing was granted, I find no reason to change that opinion.

Two recent opinions of the United States Supreme Court considering perjury before a grand jury are of import in consideration of the instant case. Both were decided on May 23, 1977: United States v. Wong, No. 74-635, 45 LW 4464; United States v. Washington, No. 74-1106, 45 LW 4465.

In Wong, the Court reversed the suppression of testimony of a Chinese woman of limited education given to a grand jury concerning illegal gambling and obstruction of state and local law enforcement.

Referring to its holding in United States v. Mandujano, 425 U.S. 564, 96 S.Ct. 1768, 48 L ed 2d 212, the Court, in Wong, noted:

> " * * * the Fifth Amendment privilege does not con-
> done perjury. It grants a privilege to remain silent
> without risking contempt, but it 'does not endow the per-
> son who testified with a license to commit perjury.'
> Glickstein v. United States, 222 U.S. 139, 142 (1911).
> The failure to provide a warning of the privilege, in
> addition to the oath to tell the truth, does not call
> for a different result. The contention is that warn-
> ings inform the witness of the availability of the
> privilege and thus eliminates the claimed dilemma of
> self-incrimination or perjury. Cf. Garner v. United
> States, 424 U.S. 648, 657-658 (1976). However, in
> United States v. Knox, 396 U.S. 77 (1969), the Court
> held that even the predicament of being forced to choose
> between incriminatory truth and falsehood, as opposed to
> refusing to answer, does not justify perjury. * * * "

In Washington, the Court overruled a lower court's judgment granting a motion to suppress grand jury testimony and quashing an indictment on the ground that it was based on evidence obtained in violation of Fifth Amendment privileges against self-incrimination. The Court held:

-14-

" * * * But this Court has not decided that the grand jury setting presents coercive elements which compel witnesses to incriminate themselves. Nor have we decided whether any Fifth Amendment warnings whatever are constitutionally required for grand jury witnesses; moreover, we have no occasion to decide these matters today, for even assuming that the grand jury setting exerts some pressures on witnesses generally or on those who may later be indicted, the comprehensive warnings respondent received in this case plainly satisfied any possible claim to warnings. Accordingly, respondent's grand jury testimony may properly be used against him * * *."

Further, in Washington, as in the instant case, the defendant argued that having to invoke the Fifth Amendment before the grand jury placed him at a disadvantage in the eyes of the grand jury. This argument entirely overlooks the fact that the grand jury's historic role is as an investigative body; it is not an arbiter of guilt or innocence. Moreover, it is well settled that invocation of Fifth Amendment privilege in a grand jury proceeding is not admissible in a criminal trial, where guilt or innocence is actually at stake. United States v. Wong, supra.

The same holding and reasoning should, in my opinion, be applied here. This is a case that in my opinion should have been tried to a jury. They, not this Court, should have decided the fact question.

John Conway Harrison
Justice

Mr. Justice Daniel J. Shea commenting on the dissent:

Since writing this opinion a dissent has been prepared and filed.

I strongly support the right and the need for dissenting opinions, but it seems to be that it should be responsive to the facts and law of the case.

This case does not concern itself in any form with the suppression of testimony before a grand jury, and therefore, the Wong case and the Washington case cited, quoted and discussed in the dissent are simply not applicable. And, neither does the invocation of the Fifth Amendment, as in the Washington case, have anything to do with the facts or law of this case, except perhaps as a procedural and historical aside.

It should be noted that the dissenter wrote the original majority opinion in this case dismissing 16 of the 18 counts, but ordering a trial on counts 9 and 10. In the original opinion, the facts were not applied to the law of perjury, and that is the reason for the original mistake on counts 9 and 10. Specifically, the test of materiality was never applied to the facts of count 9. And, neither in count 9 was the requirement of corroboration applied to the facts, i.e., the corroborating evidence must be admissible evidence and not hearsay as in this case, and the corroborating evidence must be independent of the direct evidence. In count 10 the direct evidence requirement for proof of perjury was not applied to the facts of count 10.

The true test of the validity of this dissent, can, I believe, be summarized as follows: If the dissent would reverse the district court, then on what counts and for what legal reasons? On these matters the dissent is silent.

Daniel J. Shea
Justice

-16-