El Pueblo de Puerto Rico, demandante y apelado, *v.* José Medina Rivera, *alias* El Brujo, acusado y apelante.

No. 2993.—*Visto:* Noviembre 8, 1927. *Resuelto:* Julio 24, 1928.

*G. Cruzado Silva,* abogado del apelante; *José E. Figueras,* abogado de *El Pueblo,* apelado.

EL JUEZ ASOCIADO SEÑOR WOLF, emitió la opinión del tribunal.

Para sostener que no se le acusaba de un delito público, el apelante insiste en que la acusación presentada por el delito de perjurio no aduce que las manifestaciones hechas por él fueran pertinentes a la causa que anteriormente se había estado investigando.

La acusación alega, entre otras cosas, que el apelante hizo una declaración falsa en una investigación practicada por el fiscal del distrito, "siendo un hecho esencial a la cuestión objeto de la investigación que se practicaba." En la acusación no se trataba de exponer los hechos de los cuales podía deducirse la pertinencia de tal manifestación.

Desde tiempo inmemorial han existido dos formas de alegar la pertinencia de una supuesta declaración falsa. Una de ellas es exponiendo los hechos de los cuales puede inferirse tal pertinencia o alegando la pertinencia en términos generales, como se hizo en este caso. Cualquiera de estas formas es suficiente. *People* v. *Ah Bien,* 77 Cal. 12; *El Pueblo* v. *Ayala,* 13 D.P.R. 200; *El Pueblo* v. *Ortiz,* 11 D.P. R. 405; 21 R.C.L. 268; 124 A.S.R. 666; 20 Cal. Jur. 1019. En el caso de *El Pueblo* v. *Colón,* 10 D.P.R. 207, citado por el apelante, los supuestos hechos fueron alegados, y no apareció que fueran pertinentes, a pesar de que así se alegaba expresamente, y, por consiguiente, tal caso no es una autoridad para sostener la contención del apelante.

El acusado también hace alusión a la supuesta diferencia existente entre los artículos 117 y 122 del Código Penal. De acuerdo con el primer artículo citado se comete el delito de perjurio haciendo a sabiendas una declaración falsa; y según

el último artículo, haciendo la declaración categórica de un hecho cuya certeza no conste al declarante. Sin embargo, al leerse la acusación se ve con entera claridad que el fiscal procedió directamente de conformidad con el artículo 117 e imputó al acusado haber hecho una declaración a sabiendas de que era falsa. En el caso de *El Pueblo* v. *Trujillo*, 24 D.P.R. 129, meramente sugerimos que si el fiscal tenía dudas podía presentar dos narraciones, pero estuvimos muy lejos de indicar que generalmente debe seguirse esa práctica.

Es conveniente repasar los hechos de este caso. En la acusación se alegaba, en síntesis, que José Medina Rivera, el acusado, compareció ante el fiscal de Arecibo, funcionario que está autorizado para tomar juramentos, y en ocasión en que se practicaba una investigación en el caso de *El Pueblo* v. *Julio M. Izquierdo* por el delito de hurto de mayor cuantía, después de haber prestado juramento dicho acusado, a sabiendas de que sus manifestaciones eran falsas, y siendo tales manifestaciones esenciales a la cuestión que se investigaba, declaró bajo juramento que Julio M. Izquierdo le había dicho, el domingo 28 de febrero último, lo que sigue: "Que él (Julio M. Izquierdo) tenía la cartera que había sido hurtada a Sebastián Astor; que la tenía guardada; que aquello era la lotería de Madrid; que eran diez mil quinientos; que no se apurara, que así viniese la plana mayor él (José Medina Rivera) no tenía más que negar y negar; que él (Izquierdo) le pondría abogado," siendo enteramente falso que Julio M. Izquierdo hiciera al acusado Medina las referidas manifestaciones, etc.

Durante el juicio, Eduardo Pérez Casalduc, fiscal de distrito declaró, substancialmente, que en dicha investigación José Medina Rivera compareció ante él, que mientras Medina estaba sentado en la oficina del testigo, éste mandó a buscar a la madre del acusado, quien también era testigo, y que entonces entre ella y este acusado medió una conversación,

diciéndole la madre que Julio M. Izquierdo había declarado y los inculpaba a ellos del delito que el testigo investigaba. Después de decir la madre que ella había declarado, el acusado Medina dijo que iba a decir la verdad. Entonces el fiscal expone más detalladamente las supuestas manifestaciones que en la acusación se alega habían sido hechas por Medina. Luego el fiscal dijo que durante el juicio contra Izquierdo, Medina negó que hubiera hecho esas manifestaciones, o, mejor dicho, que él, Medina, las hizo porque el fiscal lo había amenazado con veinte años de presidio. El fiscal entonces agregó que Medina declaró bajo juramento que las manifestaciones hechas anteriormente eran falsas.

En la repregunta se descubrió que se hizo que la madre declarara por medio de lo que posteriormente fué caracterizado por un policía secreto como una artimaña. Esta treta consistió en que un policía secreto llamó por teléfono desde un sitio distante, y, fingiendo ser el Jefe Izquierdo, le dijo a la madre del entonces testigo, el acusado en este caso, que él, Izquierdo, ya había declarado y que ella debía decir la verdad. Más tarde en la repregunta el fiscal dijo que la declaración de la madre había sido enteramente espontánea.

El taquígrafo del fiscal fué llamado a declarar y reprodujo la declaración de Medina prestada durante la investigación. El testigo declaró que la declaración de Medina fué enteramente voluntaria. El policía secreto Monteserín ocupó la silla testifical y declaró respecto a algunos de los hechos anteriormente relatados y al ardid de que él se valió. Entre otras cosas, él le dijo a la madre del acusado que Izquierdo ya había declarado. Entonces se leyó la declaración de este acusado prestada en el juicio contra Izquierdo. En ese juicio, él negó que la declaración que hizo al fiscal fuera cierta.

Julio M. Izquierdo ocupó entonces la silla de los testigos, y negó categóricamente que él alguna vez hubiese hecho la

declaración imputádale por Medina cuando éste fué examinado originalmente por el fiscal.

Por tanto, es evidente que la teoría de El Pueblo en el presente caso es que Medina declaró falsamente ante el fiscal en la investigación practicada por este funcionario y que el acusado no tenía derecho a que la corte ordenara su absolución, según se alega en el primer señalamiento de error.

En el segundo señalamiento de error se alega que la prueba demuestra que la declaración prestada por Medina ante el fiscal no fué espontánea.

Si bien comprendemos que el acusado tal vez pudo creer que había sido engañado por la policía secreta, sin embargo, la declaración prestada por él ante el fiscal no dejó de ser voluntaria por ese motivo. El ardid se jugó con la madre del acusado, y es remoto suponer que la declaración de éste no fuera voluntaria, una vez que se admita que su declaración hubiera tenido el carácter de espontánea si la madre no hubiese sido inducida a declarar por medio de la treta. No se usó violencia, ni se hizo promesa alguna al acusado, ni se hizo nada que ordinariamente pueda destruir el carácter espontáneo de una manifestación. Asimismo, la declaración no era una confesión, sino una acusación contra otra persona. No se trata de una acusación contra Medina con motivo de una confesión hecha por él. El tercer señalamiento de error abarca la misma cuestión, y no hallamos motivo alguno para revocar la sentencia debido a tal supuesta falta de espontaneidad.

Inducir a un testigo por medio de un ardid a hacer una declaración que de lo contrario no haría, si bien no es la forma ideal de obtener la verdad, no está prohibido por la ley en las investigaciones de casos criminales. Además, creemos que la corte en sus instrucciones concedió al acusado un poco más de lo que él tenía derecho a esperar, cuando dijo que las manifestaciones falsas no debían ser el resultado de un engaño. Aun el engaño no justificaría que un ciudadano acuse a otro falsamente ante el fiscal.

El cuarto señalamiento de error provoca nuestra mayor duda. Dice así:

"La Corte erró al condenar al acusado a pesar de ser insuficiente la prueba para ello."

Desde luego que el señalamiento debió haber sido que el veredicto es contrario a la prueba. Hemos tenido en nuestras mentes serias dudas respecto a si las manifestaciones hechas por el acusado ante el fiscal no eran las verídicas. Es muy improbable que Medina hiciera tales manifestaciones, de no haber sido ciertas. ¿Qué motivo pudo haber tenido Medina para acusar a Izquierdo a instancias de éste, a menos que fuera cierto que Izquierdo era culpable? Sin embargo, el caso fué sometido a un jurado que oyó a los testigos declarar, y que también oyó a Izquierdo. No nos sentimos justificados para decir que el jurado no tenía derecho a creer que Izquierdo nunca hizo a Medina las manifestaciones que éste comunicó al fiscal.

Leyendo los autos de este caso, tenemos la idea de que si el acusado hubiese insistido durante la vista en que su primera declaración era cierta y su segunda declaración falsa, tal vez hubiese logrado que el jurado estuviera de acuerdo con él. Pero tal como se vió el caso, no podemos decir que el jurado no estuviera justificado al hallar que el acusado había hecho una declaración falsa contra Julio M. Izquierdo.

En su quinto señalamiento, el apelante dice que la pena de siete años impuéstale es excesiva. Acusar a un hombre falsamente como en este caso, justifica que una corte imponga una pena severa, y no vemos razón alguna para intervenir con la discreción de la corte inferior, por lo que *la sentencia apelada debe ser confirmada.*

El Juez Asociado Sr. Aldrey está conforme con la sentencia y opinión menos con el antepenúltimo párrafo de ésta; el Juez Asociado Sr. Hutchison disintió y el Juez Asociado Sr. Texidor no intervino.