EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* JOSÉ CORRETJER HERNÁNDEZ, acusado y apelante.

Núm. 8316.—*Sometido:* Diciembre 13, 1940. *Resuelto:* Febrero 13, 1941.

44

*A. Lastra Chárriez* y *A. D. Marchand Paz*, abogados del apelante; *Hon. Procurador General George A. Malcoïm* y *R. A. Gómez*, *Fiscal del Tribunal Supremo*, abogados de El Pueblo, apelado.

EL JUEZ PRESIDENTE SEÑOR DEL TORO emitió la opinión del tribunal.

José Corretjer Hernández fué acusado de desacato por perjurio. La orden dictada al efecto por el Juez Córdova de la Corte de Distrito de San Juan, se ajusta a la ley especial sobre la materia. Ley 41, 1911, para proveer un castigo sumario por el delito de perjurio cometido en corte abierta, y para otros fines. Código Penal, ed. 1937, pág. 69.

Celebrado el juicio, la corte declaró culpable al acusado y le impuso dos meses de cárcel. Apeló Corretjer y señala en su alegato tres errores como cometidos por la corte 1, al actuar sin jurisdicción, 2, al dictar su sentencia cuando ya no estaba pendiente el delito dentro de cuyo juicio se cometió el desacato por perjurio, y 3, al dictar sentencia a base de prueba insuficiente.

La falta de jurisdicción invocada en el primer señalamiento de error lo es a base de que en la orden inicial no se menciona el funcionario ante quien prestó juramento el supuesto perjuro, ni la facultad de tal funcionario para tomarlo.

La orden de que se trata, expresa:

"ORDEN.—Por cuanto: En el día de hoy y durante la vista ante esta corte del caso criminal Núm. 3963, El Pueblo de Puerto Rico v. José Corretjer Hernández, por asesinato en segundo grado, el acusado José Corretjer Hernández fué llamado a declarar por la defensa y *después de haber prestado juramento debidamente en corte abierta* de decir la verdad, toda la verdad y nada más que la verdad, intencionalmente y contrario al juramento prestado, y en corte abierta, declaró sobre cierto extremo sustancial, esencial y pertinente al caso, en forma falsa y a sabiendas de que no era ni es la verdad, a saber: que en el día 4 de octubre de 1936 y en el sitio y en los momentos

en que fué herido mortalmente José Diosvaldo Díaz, dicho testigo José Corretjer Hernández no llevaba consigo baqueta o funda alguna de revólver, siendo la verdad que el referido testigo allí y entonces llevaba sobre su persona una baqueta o funda de revólver;—Por cuanto: El Juez que suscribe y que ha presidido la corte durante la vista del referido caso, está convencido de que el referido testigo José Corretjer Hernández cometió perjurio en su declaración ante la corte en la forma y manera que se ha expuesto;—Por Tanto: El Juez que suscribe ORDENA el arresto y detención de José Corretjer Hernández, bajo la custodia del Alcaide de la Cárcel de Distrito de San Juan, y le requiere para que comparezca ante esta corte en el día siete de diciembre de 1939, a las nueve de la mañana, para mostrar causa por la cual no debe ser condenado por desacato por perjurio en corte abierta; disponiéndose que el referido José Corretjer Hernández podrá prestar fianza de $500 para su libertad provisional hasta tanto comparezca a mostrar causa.'' (Itálicas nuestras.)

La falta de jurisdicción que ahora se alega no se levantó en la corte de distrito no obstante haberse presentado una excepción previa de falta de hechos suficientes fundada en que aun aceptando la certeza de los alegados en la orden nunca se imputaría el delito ya que el hecho que se decía falseado no era uno esencial al caso principal ventilado.

En un caso similar, *El Pueblo* v. *Alvarado*, 19 D.P.R. 870, 872, dijo esta corte:

''...El juicio tuvo lugar el día 4 de abril 1912, y en 9 de abril 1912 la corte declaró al acusado culpable de desacato por perjurio y le condenó a pagar una multa de $100, o en su defecto, a sufrir un día de cárcel por cada dos dólares que dejara de satisfacer.

''Contra esta sentencia se interpuso esta apelación y consta en los autos un pliego de excepciones y una exposición del caso, habiendo presentado el abogado en su alegato nueve fundamentos de error. El primero de éstos se refiere a la falta de jurisdicción de la corte. El apelante alega en primer término que no hay jurisdicción porque la orden inicial no contenía ninguna alegación de que en la fecha en que dicha orden fué dictada por la corte, se encontraba pendiente el caso civil. Esta cuestión no fué alegada ante la corte inferior donde era debidamente materia de defensa, y no habiendo prueba alguna en sentido contrario, la presunción sería que la corte obró de acuerdo con la ley y que el caso civil está aun pendiente.''

Aceptando sin embargo que por presentarse la cuestión de que se trata como una de jurisdicción pueda y deba considerarse por vez primera en esta corte, diremos que no está bien fundada.

Toda la argumentación del apelante se basa en lo prescrito en el artículo 117 del Código Penal que dice:

"Toda persona que, habiendo jurado testificar, declarar, deponer o certificar la verdad *ante cualquier tribunal, funcionario o persona competente, en cualquiera de los casos en que la ley permitiere tomar tal juramento,* declarare ser cierto cualquier hecho esencial, conociendo su falsedad, será culpable de perjurio...." Itálicas nuestras.

Y aquí no se trata de la aplicación de ese artículo. El apelante fué juzgado y condenado de acuerdo con la ley especial sobre la materia que comienza así:

"Si *durante la vista de cualquier caso ante una corte* municipal o de distrito en Puerto Rico, *compareciere un testigo y prestare juramento* o afirmación de decir la verdad *ante dicha corte,* en cualesquiera casos en que se prestare dicho juramento o afirmación, y después de prestado, intencionalmente y contrario al mismo, declarare como cierta cualquier cosa substancial que el testigo sabe que es falsa o que no es verdad, será culpable de perjurio; *y si dicho juramento o afirmación se prestare en corte abierta* y se violare en la forma expresada en la presente, entonces dicho testigo será culpable de desacato a la corte y castigado según se dispone más adelante en esta Ley. Si el juez que preside en dicho caso quedare convencido, en cualquier caso pendiente ante su corte, de que un testigo, después de haber prestado juramento o afirmación, según se dispone por la ley, de decir la verdad en cualquier asunto pendiente ante la corte, es culpable de perjurio según se define en la presente, será entonces deber de dicho juez, ante quien se celebrare el juicio, ordenar, y por la presente se le faculta para que ordene, a moción propia, el arresto y detención del ofensor; y dictará una orden que se notificará a dicho ofensor para que comparezca y explique las razones que tuviere por las cuales no deba ser castigado por desacato a la corte....." Itálicas nuestras.

En tal virtud, es suficiente para cumplir con el requisito del juramento, lo consignado en el primer por cuanto de la orden que dejamos transcrita. No hubo error.

██ La falta de jurisdicción que se suscita por el segundo señalamiento o sea que la corte de distrito perdió la que pudiera tener para juzgar el caso porque cuando lo hizo ya no estaba pendiente la causa dentro de la cual fué desacatada, también se levanta por vez primera en apelación.

Los autos demuestran que la orden inicial se dictó un día antes de terminarse el juicio por asesinato. Y ello es bastante a nuestro juicio para que la corte adquiriera jurisdicción para conocer del asunto de acuerdo con los términos de la ley especial sobre la materia ya citada.

Para sostener su contención cita el apelante la decisión de esta Corte Suprema en el caso de *El Pueblo* v. *Valcourt,* 18 D.P.R. 484, 489. En ella la corte, hablando por su Juez Asociado Sr. MacLeary, se expresó así:

"Pero existen otras cuestiones que deben tomarse en consideración al resolver este caso, algunas de las cuales han dado por resultado que se hayan argumentado de nuevo las mismas, así como que se hayan presentado alegatos adicionales por el representante de El Pueblo de Puerto Rico y por el abogado del acusado. La primera es la que se refiere al significado de las palabras 'durante la celebración del juicio de cualquier caso pendiente' en las cortes, y las palabras han sido empleadas en el primer artículo del estatuto en donde se castigan tales desacatos. El recordar que tenemos en nuestro Código Penal una ley válida y subsistente para denunciar y castigar el delito de perjurio en forma ordinaria por medio de la presentación de una acusación y la celebración de un juicio ante un jurado o la corte, lo mismo que cualquier otro delito más grave (*felony*), nos puede ayudar en esta cuestión. Los desacatos que se cometen en presencia de la corte, como el que ahora se ha imputado al apelante, ordinariamente se castigan sumariamente y mientras está pendiente el trabajo que ordinariamente tiene la corte. El perjurio puede ser investigado y castigado si fuere necesario en cualquier tiempo dentro del término fijado por la ley de prescripción. Pero el desacato cometido por el perjuro al tratar de engañar a la corte presentando una declaración falsa, exige procedimientos más sumarios. Por tal razón es que tal vez el procedimiento de desacato está limitado al tiempo 'durante el juicio de un caso pendiente.' Un caso civil está pendiente ante una corte desde que se presenta la demanda hasta que se dicta sentencia resolviendo la cuestión que se litiga. Cuando el caso deja de estar pen-

diente, la jurisdicción para castigar por desacato cometido med:ante perjurio cesa y el delincuente sólo puede ser procesado por el perjurio en la forma ordinaria.

Aunque el lenguaje de la opinión se presta a la interpretación que le da el apelante, no tiene el alcance que le atribuye. No hubo necesidad de hablar con mayor precisión en el caso de *Valcourt* porque los procedimientos allí no sólo habían terminado si que comenzado después de terminado el juicio en que el perjurio fué cometido—un pleito sobre divorcio—mientras que aquí si bien terminaron después, comenzaron antes de la terminación del juicio por asesinato. La situación que la ley especial contempla es la de la dignidad de una corte ofendida por una persona que comparece ante ella y presta juramento de decir verdad y luego la engaña declarando a sabiendas falsamente sobre alguna cuestión fundamental en el asunto que se ventila, y la reacción inmediata de la corte ordenando la detención del ofensor al quedar convencida de su actuación ofensiva y delictiva al par. Véase *Pueblo* v. *Aquino,* 33 D.P.R. 255.

Una vez iniciado el procedimiento, la jurisdicción continúa sin que sea necesario que termine antes de que finalice el asunto principal. Surgió dentro de él, pero es independiente de él. No fué el propósito del legislador el que el resultado de la investigación tuviera que tomarse en cuenta para decidir la causa criminal o el pleito civil en que el testimonio falso se prestara. Al contrario. En casos por jurado por ejemplo se ha atacado la ley por la influencia que la decisión del juez pudiera tener en el veredicto y la ley ha podido sostenerse porque se ha concluído que el procedimiento que prescribe es enteramente ajeno a ese propósito. No hubo error.

Tampoco fué cometido el tercero y último de los errores señalados o sea aquél por el que se sostiene la insuficiencia de la prueba.

La opinión emitida por la corte sentenciadora es tan completa y está tan bien razonada, que nos parece lo más propio

transcribirla como fundamento de nuestra conclusión sobre la no existencia del error.   Dice:

"En los días 24, 25, 27 y 28 de noviembre de 1939, se vió ante esta corte, por jurado, el juicio del caso criminal Núm. 3963 de El Pueblo de Puerto Rico v. José Corretjer Hernández, por asesinato. La acusación imputaba al acusado José Corretjer Hernández el haber dado muerte ilegal y voluntaria, con malicia premeditada y delibera-- ción, al ser humano José Diosvaldo Díaz.—La teoría y la prueba del Fiscal tendían a demostrar que el día 4 de octubre de 1936, José Diosvaldo Díaz guiaba un automóvil Pontiac, y que el acusado José Corretjer Hernández iba sentado en el asiento delantero derecho de dicho carro al lado de Díaz, que el carro venía por la calle Brum- baugh, Río Piedras, y que al llegar a la esquina de las calles Brumbaugh y Giorgetti, Díaz viró hacia la izquierda deteniendo el carro frente al Cuartel de la Policía, frente al cual, y de espaldas a la calle, se encontraba el Sargento Martínez, hoy Jefe Martínez. Al detener el carro Díaz, dirigiéndose al Sargento Martínez, dijo: 'Cabo, cabo, hágame el favor', y Corretjer inmediatamente dijo: 'No, no, eso no.'  Al oír las voces el Jefe Martínez se volvió y pudo observar a Corretjer en el momento en que éste esgrimía un revólver contra Díaz y le disparaba un tiro de bala el cual le produjo la muerte a Díaz momentos después.  El Jefe Martínez entonces se abalanzó sobre Corretjer, recogió el revólver que estaba en el piso del automóvil, y entregó a Corretjer al policía Pedro A. Rivera, hoy cabo, instruyéndole se hiciera cargo de Corretjer.  El policía Rivera condujo a Corretjer al interior del cuartel y declara que al notar cierto movimiento de Corretjer que le pareció sospechoso, registró a éste y debajo del chaquetón que usaba Corretjer encontró una baqueta de revólver.—La teoría y prueba de la defensa tendían a demostrar que el día de los hechos Corretjer no portaba ni revólver ni baqueta; que el revólver lo portaba José Diosvaldo Díaz y perte- necía a éste; que José Diosvaldo Díaz había invitado a Corretjer a montar en su carro con el fin de llevarle a su casa en la calle Giorgetti esquina Muñoz Rivera; que al llegar el automóvil a la esquina de las calles Brumbaugh y Giorgetti, en vez de doblar a la derecha como debió haber hecho si era su intención conducir a Corretjer a su casa, Díaz dobló inesperadamente a la izquierda y estacionó su carro frente al Cuartel de la Policía, donde estaba el Jefe Martínez y que entonces, después de estacionado el carro frente al Cuartel de la Policía, Díaz sacó un revólver que llevaba escon- dido debajo de su camisa (la prueba de la defensa y de El Pueblo

está de acuerdo en cuanto a que Díaz estaba en camisa y Corretjer usaba chaquetón), y esgrimió éste contra Corretjer, quien dijo: 'No, no, eso no', al mismo tiempo que agarró el arma con que atacaba Díaz, volviéndola en contra de éste, y que al verse Díaz en peligro fué que gritó: 'Cabo, Cabo, haga el favor', y que en esta lucha se escapó un tiro que fué el que produjo la muerte a Díaz.—El Jefe Martínez declaró que no vió lucha alguna, que lo que vió fué que Corretjer esgrimió el revólver contra Díaz. El Cabo Rivera declaró, como hemos visto, que Corretjer portaba una baqueta. Corretjer fué el único testigo que declaró que el revólver lo portaba Díaz.— Convencido el juez de que Corretjer mentía deliberadamente al negar bajo juramento que él portara el revólver y la baqueta, y antes de que el caso se entregara al jurado, ordenó al jurado retirarse y procedió a dictar una orden requiriendo de Corretjer mostrara causa por la cual no debía ser condenado por desacato por perjurio.—El día 7 de diciembre compareció Corretjer a mostrar causa. Excepcionó la orden por entender que no se aducían hechos demostrativos de que el testimonio de Corretjer sobre la baqueta fuera sobre un extremo substancial, y la excepción fué declarada sin lugar. (Véase *Pueblo* v. *Medina Rivera,* 38 D.P.R. 693.) Se presentó entonces la prueba de cargo consistente en las declaraciones del Jefe Martínez, del Cabo Rivera y del propio Corretjer. El querellado entonces pidió se dejara sin efecto la orden por falta de prueba, a base de que no se había probado que Corretjer tuviera la intención de mentir a sabiendas de que lo que él decía era falso. Declarada sin lugar la moción, el acusado manifestó, por su abogado, que deseaba descansar en su moción y por lo tanto sometía el caso a base de la prueba de cargo.—De los hechos esenciales envueltos en la querella, los únicos sobre los cuales puede haber controversia, y los únicos que la representación del querellado ha discutido, son los siguientes: 1.—Si la declaración de Corretjer con respecto a la baqueta versa sobre un extremo substancial. 2.—Si la declaración de Corretjer con respecto a la baqueta fué o no fué falsa. 3.—De ser falsa la declaración de Corretjer, si la hizo a sabiendas de que no era la verdad.—¿Qué se entiende por 'cosa sustancial' en una querella por desacato por perjurio? Ciertamente que la frase no está limitada en su alcance a aquellos hechos cuya alegación fuere esencial en una acusación. De ser ello así en un caso en que la prueba fuere toda circunstancial, no habría 'cosas substanciales' y no podría ningún testigo cometer perjurio. Es evidente que el significado de 'cosas substanciales' es mucho más amplio, y comprende cualquier extremo

que tienda en alguna forma u otra a establecer el delito o a conectar al acusado con el delito. Véase 20 Cal. Jur. 1012 *et seq.*—En el caso específico de El Pueblo v. Corretjer, la circunstancia de que Corretjer portara o no una baqueta, es de suma importancia en la determinación de si fué Corretjer o fué Díaz el que portaba el arma que causó la muerte. Los testigos principales de cargo lo fueron el Jefe Martínez, Rafael Escobar y el Cabo Rivera. Martínez y Escobar presenciaron los hechos y establecieron que fué Corretjer quien agredió a Díaz con el revólver, y que no hubo lucha. Pero los testigos de un hecho de sangre que se desarrolla en breves instantes, sin previo aviso, pueden cometer errores de observación, no importa su integridad o su inteligencia. Por eso la declaración del Cabo Rivera, quien declaró haberle ocupado la baqueta a Corretjer, aporta quizás el más importante eslabón en la cadena de prueba demostrativa de la comisión del delito por Corretjer. Rivera no puede haberse equivocado: o mintió deliberadamente, sin que aparezca móvil alguno para ello, o le ocupó la baqueta a Corretjer. Si le ocupó la baqueta, y si Corretjer, lejos de explicar o excusar esta circunstancia que tan fuertemente le inculpa, niega que él tuviera la baqueta, este extremo viene a ser no ya un extremo substancial, si que uno de los dos o tres hechos esenciales en la determinación de la inocencia o culpabilidad del acusado.—Veamos ahora si la declaración de Corretjer es o no es falsa. El Jefe Martínez y el Cabo Rivera declararon en una forma imparcial que llevaba consigo la convicción de que estaban narrando la verdad, según ellos la entendían, sobre los hechos que pudieron observar. No apareció móvil alguno que pudiera haber llevado a estos dos funcionarios a mentir, a exagerar o a torcer la verdad de los hechos. A pesar de que los hechos ocurrieron casi cuatro años antes del juicio, a pesar de que estos testigos habían declarado en la misma forma en los dos juicios anteriores, la defensa no pudo en forma alguna debilitar ni impugnar sus declaraciones excepto a través de la declaración del propio acusado. Éste declaró en forma visiblemente nerviosa, con una mirada que esquivaba los ojos de todos en la corte menos la de su abogado defensor. Su testimonio fué sumamente improbable: pretendía hacer creer al jurado que Díaz, quien guiaba el carro en que se produjo la muerte, deliberadamente estacionó el mismo frente al cuartel, en presencia del Sargento Martínez, y que no fué hasta después de haber así estacionado el carro, que manifestó su intención de asesinar a Corretjer, esgrimiendo entonces un revólver, que dice Corretjer llevaba Díaz debajo de su camisa.—La corte llegó a la

convicción de que Corretjer mentía, en lo concerniente a la baqueta, así como en lo referente a la posesión del arma y la agresión de parte de Díaz, convicción que no fué alterada en forma alguna en la vista sobre la orden para mostrar causa, ya que en dicha vista el querellado no presentó prueba.—Que Corretjer declaró intencionalmente, a sabiendas de que faltaba a la verdad, lo deduce la corte de las circunstancias del caso. No de otra forma puede establecerse la intención con que se comete un delito, salvo en contadísimos casos, y aparte de que difícilmente puede concebirse que Corretjer negara la posesión de la baqueta por equivocación, o por mala memoria, tuvo plena oportunidad de interponer dicha teoría como causa por la cual no debía ser condenado por desacato, y no lo hizo.—A la corte no le cabe duda de que Corretjer ha cometido perjurio. Podría objetarse, sin embargo, que el procedimiento más adecuado para este caso no es el de desacato, sino el de una acusación por el delito de perjurio.—La facultad inherente de las cortes para castigar el perjurio en corte abierta como desacato está firmemente establecida. Véase los casos citados en 11 A.L.R. 342, 49 A.L.R. 987 y 73 A.L.R. 817. Sin embargo, las cortes americanas se han impuesto limitaciones estrictas en el ejercicio de esta facultad, de la cual sólo hacen uso en casos en que la falsedad del testimonio le consta a la corte por conocimiento judicial. (Véanse los mismos casos citados.) Estas limitaciones, que incuestionablemente eran aplicables a las cortes de Puerto Rico hasta el 1911, dejaron de serlo al adoptarse por nuestra legislatura la Ley de marzo 9 de 1911, para proveer un castigo sumario por el delito de perjurio en corte abierta. (Código Penal, ed. de 1937, pág. 69.) La ley citada obedeció a la prevalencia del perjurio en Puerto Rico, y a lo inadecuada que resultaba la institución del jurado para castigar dicho delito. (Véase *Pueblo* v. *Aquino*, 33 D.P.R. 255.) En virtud de este estatuto, que parece ser único en las jurisdicciones americanas, las cortes de Puerto Rico están en el deber de castigar el perjurio en corte abierta por el procedimiento sumario de desacato, siempre que la corte adquiera la convicción de que un testigo ha cometido perjurio, y de que exista alguna prueba en conflicto con la declaración falsa. *Pueblo* v. *Aquino*, 33 D.P.R. 255.—La situación que indujo a la legislatura a imponer a las cortes el deber de castigar el perjurio por desacato aun impera. En este caso, teniendo la corte la convicción de que el querellado cometió perjurio en corte abierta, su deber es ineludible.''

*Por virtud de todo lo expuesto debe declararse sin lugar el recurso y confirmarse la sentencia apelada.*