[Crim. No. 2372. First Dist., Div. Two. Feb. 21, 1946.]

THE PEOPLE, Respondent, v. THOMAS KRITON, Appellant.

Alfred J. Hennessy and Walter F. Lynch for Appellant.

Robert W. Kenny, Attorney General, David K. Lener and Alberta Gattone, Deputies Attorney General, Edmund G. Brown, District Attorney, and Berthold Hirschberg, Assistant District Attorney, for Respondent.

GOODELL, J.—This appeal is from a judgment of conviction of perjury after a trial by jury, and from an order denying a new trial. The indictment charged that the appellant had given false testimony in a case theretofore tried in the superior court wherein he had been accused of petty theft after a prior conviction of petty theft (see Pen. Code, § 666). In the theft case this appellant was accused of stealing, on December 14, 1943, two books entitled "Queens Die Proudly" and "Paris Underground," from the Emporium, in San Francisco. At that trial he testified that he had paid for the books, and in substantiation of this testimony he produced a tag showing a sale to him of two books so entitled for $5.13. There is no dispute that the two books came into the appellant's possession on December 14, 1943, on which day he was arrested. He was released on bail on the 16th, and it was and is the theory of the prosecution that on the 17th he, or somebody acting for him, actually purchased at the Emporium two books of the same titles, paid for them across the counter, and had the said sales tag made out for the purpose of making it appear in his forthcoming defense that such tag evidenced a *cash sale made on the 14th.*

The evidence shows that the appellant entered the Emporium on December 14, 1943, and took two books, "Queens Die Proudly" and "Paris Underground," from the counters of the book department on the first floor. While there he was observed by Walter Craig, a special officer, who noted that he placed the books in a paper bag which he had brought with him. Craig followed him to the branch postoffice on the same floor, watched him remove the books from the original bag which had become torn and place them in another bag he found on the counter. Craig apprehended him as he left by the Market Street arcade.

Appellant returned with Craig to the book department, where they were joined by Edward Dalton, the store's protection superintendent. Although the appellant then realized he was under suspicion, he did not exhibit to Craig or Dalton the sales tag nor did he tell them he had it. Craig and Dalton escorted the appellant to the elevator and took him to an upstairs office where they questioned him. In the elevator Dalton removed from appellant's vest pocket a piece of paper with the names of four books on it, including the two which he had in his possession.

At the theft trial the appellant produced, as already noted,

a sales tag which had been torn in such a way that only the initial and the first syllable of appellant's surname appear (i. e. "T. Kri") but his address, 296 Third Street, fully appears. It shows a sale of two books, "Paris Underground" and "Queens Die Proudly" for $5.13. It had been torn in such a way that *the date of the sale does not appear*—simply the numeral "12" indicating the month of December.

The appellant at the theft trial attempted to account for the mutilated condition of the tag by testifying that it was torn in a scuffle in the Emporium elevator and that he had succeeded in retaining the torn fragment by concealing it in his watch pocket. He stated that he had kept it during his three days in the city prison and that the torn sales tag which he offered in evidence in the theft trial was the same tag as had been torn in the scuffle in the elevator. At that trial he testified that the tag was given him by a sales attendant at the Emporium on December 14th, as a receipt for payment for the two books. As will presently appear, the evidence establishes (and the verdict of guilty implies the finding) that the torn sales tag was written on the *17th* of December, three days after the appellant had been arrested for the theft of the two books.

 The appellant contends that the evidence is not sufficient to support the conviction as the charge of perjury is not made out by the testimony of two witnesses, or of one witness and the necessary corroboration required by the statute. (Pen. Code, § 1103a; Code Civ. Proc., § 1968.) To comply with the statute the prosecution must produce by the necessary witnesses "positive testimony as to the facts that are absolutely incompatible with the innocence of the accused. . . . Testimony proving a state of facts contrary to that sworn to by the accused, or absolutely incompatible or physically inconsistent with his evidence, will be sufficient." (*People* v. *Pustau*, 39 Cal.App.2d 407, 415 [103 P.2d 224]; *People* v. *Casanova*, 54 Cal.App. 439, 442, 443 [202 P. 45]; 20 Cal.Jur. 1023.) The evidence in this case satisfies this requirement.

Craig testified that he observed the appellant in the book department on December 14, 1943; that he carried a paper bag into which he placed two books which he selected from the counters; that the appellant was under Craig's continuous observation from the first time he saw him, and that he did not see the appellant make any payment to any employee.

Margaret Quagliano, a desk attendant in the book department at the time, identified the handwriting on the torn tag as her own; she testified that a sales tag is so made out as to produce by one operation an original, and two carbon copies, one of which is on tissue paper; that the writing on the torn tag matched the tissue copy of a tag written by her on December *17th*; that the handwriting on the original tag dated the *17th* covering the sale of two books to "T. Kri*k*on" was her own; that no sales tag made out to the appellant was included among the duplicates of the sales tags she wrote on December *14th*; that the original sales tag of the 17th introduced in evidence by the appellant, the torn sales tag and the carbon tissue introduced in evidence by the prosecution, were all made by one simultaneous operation on the *17th of December*. A comparison of the three papers indeed demonstrates this—the writing is identical and "fits" when the three sheets are laid on top of one another. Moreover in making out the sales tag the witness had started to write the first letter of appellant's surname with a "C," but corrected herself and wrote a "K" over the "C." This plainly appears in all three copies.

Miss Quagliano's testimony established that the torn tag which the appellant stated was given to him as a receipt on the *14th* was actually written on the *17th* of December, three days after he knew he was charged with theft. This was positive testimony, absolutely incompatible and inconsistent with that of the appellant. The testimony of Craig was at the very least corroborative of the testimony of Miss Quagliano, if, indeed, it did not constitute direct evidence inconsistent with the testimony of the appellant. Moreover, Miss Quagliano's testimony is demonstrably substantiated by the physical evidence of the three manifold tags. It is corroborated, also, by the negative evidence supplied by a strip of cash register "tape" —showing the sales registered through that machine on December 14th, were numbered from 44,671 to 45,222 (and including no number 46,883), and by the evidence of a similar "tape" showing the sales on the 17th, numbered from 46,380 to 46,942 which includes the number 46,883 stamped by the register when the sale is rung up. This appears in a line on the tape reading: "115 D-5.13 46883" all likewise stamped in purple type when the sale is rung up. The purple type on the "tape" and the purple type on the original pencil sales tag dated December 17 are identical; they match when placed one over the other.

The appellant interposed a demurrer to the indictment on the ground that it "not only fails to state a public offense but it alleges nothing but matters of evidence and not ultimate facts. . . ." The demurrer was overruled. The appellant contends that the indictment was fatally defective in failing to negative the truth of the alleged false testimony by setting forth the "true facts" by way of antithesis. This special ground of objection was never presented to the trial court, and is not encompassed within the grounds of general demurrer presented to that court. *People* v. *Bradbury,* 155 Cal. 808 [103 P. 215], cited by appellant, does not hold that the indictment must in all cases designate with particularity wherein the matter sworn to was false; it is authority, rather, for the proposition (p. 811) that "if the statement charged as false is of a particular fact, it is sufficient in the averment to negative that fact."

The indictment states that the appellant was sworn as a witness in his trial for petty theft, on October 4, 1944; it sets forth portions of his testimony as a witness at that trial to the effect that the torn tag then offered in evidence was given to him when he paid for the books; that it was material to know in that proceeding whether the appellant carried away two books without paying for them and without obtaining any cash receipt or other evidence of payment; "That in truth and in fact he the said defendant Thomas Kriton then and there well knew all of said testimony and statements and things so given, sworn to and stated by the said defendant, Thomas Kriton, in the evidence aforesaid were then and there false and untrue. . . ."

The particular fact charged as false was the appellant's statement as a witness that he had received the tag (later torn) as a receipt for the payment for the books. His testimony to that effect was negatived by the averment in the indictment that all of his testimony was false and untrue, complying with the requirements of *People* v. *Bradbury, supra.* The indictment in question also conforms to the test laid down by *People* v. *Pustau, supra,* 413, to the effect that the indictment is sufficient if it "sets out that the defendant under oath knowingly gave certain false testimony; that the testimony so given was material, and then sets forth in detail such testimony, and points out wherein it was false and untrue . . ., because such allegations advise the defendant of the charge against him in such a manner as to

enable him to properly prepare a defense thereto." (Pen. Code, § 966; *People* v. *Curtis*, 36 Cal.App.2d 306, 317 [98 P.2d 228].)

█ Appellant also contends that the indictment is defective because the facts allegedly sworn to, as set out in the indictment, show that the testimony was not material at the time it was given. It is difficult to perceive how there can be the slightest question of the materiality of testimony by the appellant to the effect that he received a particular sales tag as a receipt for the purchase of two books, given on his trial for the theft of the selfsame books. "The test of materiality is met when it can be said that the testimony could have properly influenced the tribunal before which the case was heard, upon the issues involved." (*People* v. *Pustau, supra*, 413.)

█ The jury were instructed in part as follows: "The court instructs the jury that the question of the materiality of the testimony given by the defendant in the prior prosecution for petty theft and charged herein to be perjurious is one for the court, and not for the jury, to determine. The court instructs the jury that the testimony set forth in the indictment which was material to the issue involved in said prior prosecution is, in substance, that on the 14th day of December, 1943, the defendant bought from and paid The Emporium for two books named 'Queens Die Proudly' and 'Paris Underground' and at said time obtained a receipt evidencing payment of said books."

That instruction clearly shows that there is no merit to the appellant's contention that the court submitted to the jury the question of whether or not the testimony given by the appellant on the theft trial was material to the issue there pending, by failing to instruct them thereupon.

█ Appellant makes the further contention that the indictment charged two assignments of perjury and that the court erred in failing to instruct the jury that they must reach unanimous agreement upon either or both of the assignments. He fails to point out the two assignments so charged in the indictment. The respondent's position that the indictment charges but one act of perjury, and that all the testimony set forth in the indictment was in proof of the fact that the torn sales tag was given to the appellant as a receipt, clearly appears from a reading of the indictment; it is supported by the court's instruction to the jury that it must be

convinced that the defendant took a duly administered oath and "that he testified . . . in substance that on the 14th day of December, 1943, he bought from and paid The Emporium for two books named 'Queens Die Proudly' and 'Paris Underground' and at said time obtained a receipt evidencing payment thereof. . . ."

Shortly after the jury retired it returned for further instructions.

The foreman told the court that there was a point of law "that wasn't too clearly in our minds." The record then shows the following:

"The Foreman: The point was, the girl that testified on the stand there as to writing the sales ticket in The Emporium, whether that would be direct testimony.

"The Court: Well, the court can't answer that for you, because if I attempted to answer that I would be invading the province of the jury. That is the function and responsibility of the jury. All that I can do for you in that regard, if you desire it, is to read again the instruction that I gave on that particular phase of the case as to direct evidence and what is required in a perjury case. Do you desire that I do that? It isn't my province to answer your question, because that is your function.

"The Foreman: I believe that we should have it read again."

The court thereupon reread its prior instruction as to the type of proof required to establish perjury, in conformity with Penal Code section 1103a: "Perjury must be proved by the testimony of two witnesses, or of one witness and corroborating circumstances; and the testimony of the witness or witnesses must be positive or direct testimony as to facts contrary to the testimony sworn to by the accused or absolutely incompatible with the innocence of the accused." The judge then read the definition of direct evidence contained in the Code of Civil Procedure, section 1831.

Appellant now contends that the court submitted a question of law to the jury by failing to instruct the jury whether the sales attendant's testimony was direct or circumstantial evidence. It is apparent from the guarded language of the judge that he was taking extreme care to avoid saying anything that might be construed as passing upon the facts. The appellant cannot complain of such an attitude or of such conduct. When the instructions read as a whole show as the

instructions in this case do, that the trial judge fully and fairly advised the jury as to the kind, quality and degree of proof necessary before the appellant could be convicted of perjury, he has done "all the law requires." (*People* v. *Curtis, supra,* 322, and cases cited; *People* v. *Macken,* 32 Cal.App.2d 31, 42 [89 P.2d 173].)

The judgment of conviction and the order denying the motion for a new trial are affirmed.

Nourse, P. J., and Dooling, J., concurred.