EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* LUIS ORTIZ COLÓN, acusado y apelante.

*Número:* 17269   *Resuelto:* 13 de abril de 1962

---

*Luis A. Archilla Laugier* y *Vicente Ortiz Colón,* abogados del apelante; *J. B. Fernández Badillo, Procurador General,* y *Juan A. Faría, Procurador General Auxiliar,* abogados de El Pueblo.

Sala integrada por el Juez Presidente Señor Negrón Fernández y los Jueces Asociados Señores Blanco Lugo y Dávila.

EL JUEZ ASOCIADO SEÑOR BLANCO LUGO emitió la opinión del Tribunal.

Prescribe el artículo 117 del Código Penal, ed. 1937, 33 L.P.R.A. sec. 421, que será culpable de perjurio "toda persona que, habiendo jurado testificar, declarar, deponer o certificar la verdad ante cualquier tribunal, funcionario o persona competente, en cualquiera de los casos en que la ley permitiere tomar tal juramento, declare ser cierto cualquier hecho esencial, conociendo su falsedad." Una de las reglas para determinar la suficiencia de las alegaciones[1] en una acusación por el delito mencionado está contenida en el artículo 89 del Código de Enjuiciamiento Criminal, ed. 1935, 34 L.P.R.A. sec. 144 que dice que "bastará exponer la esencia del pleito o asunto con referencia al cual se cometió el delito y en qué tribunal y ante quién fue prestado el juramento que se denuncia como falso, y que el tribunal, o la persona ante quien el juramento fue prestado, tenía facultad para tomarlo, con alegaciones convenientes acerca de la falsedad del asunto en que el perjurio está indicado."

Contra el apelante se inició un proceso criminal por perjurio mediante acusación por el fiscal que literalmente lee como sigue:

"El referido acusado Luis Ortiz Colón allá para el 17 de abril de 1958 y en Ponce, Puerto Rico, que forma parte del Tribunal Superior de Puerto Rico, Sala de Ponce, y mientras declaraba como testigo en el caso de . . . sobre Hábeas Corpus, civil número CS–58–259, que es un procedimiento autorizado por Ley, sobre Impugnación de Causa Probable para el arresto y encarcelamiento de los mencionados peticionarios por el delito de Asesinato Genérico, como co-autores y principales por la muerte de . . . en el Tribunal Superior de Ponce, Foro con jurisdicción y competencia para resolver dicho caso, presidida la Sala por . . . y habiendo jurado en Sala abierta, ante un Sub-secretario de dicha Sala, funcionario autorizado para tomar

---

[1] El artículo 66 del Código de Enjuiciamiento Criminal, ed. 1935, 34 L.P.R.A. sec. 121, establece que "Todas las formas de alegación en acciones penales, y las reglas por virtud de las cuales se determina la suficiencia de las alegaciones, son las que prescribe este Código." Cfr. Reglas 6.5 y 7 de las de Procedimiento Civil de 1958, 33 L.P.R.A. (Supl. 1960), págs. 99–101.

juramentos, testificar, declarar, deponer o certificar la verdad ante dicho Tribunal, ilegal, voluntaria, maliciosa y criminalmente, y contrario a dicho juramento, juró como hechos ciertos, entre otras cosas, que

el 10 de enero de 1958 el . . . no lo fue a buscar en el carro Lincoln de dicho . . . a la línea Kofresí; que . . . no lo invitó a entrar al automóvil ni le pidió que le hiciera un favor; que . . . no lo llevó por la carretera de Juana Díaz; que . . . no le dijo que había pasado un accidente y que lo ayudara a sacar una cosa que tenía en el carro; que el aquí acusado no le dijo que 'sí' . . . y que éste no lo mandó a buscar a un carro; que no fue a la línea Kofresí el aquí acusado ni cogió el carro marca Dodge verde, tablillas P–48–813; que el acusado no fue a la casa . . . y que . . . no le dijo que dejara el carro allí y se viniera con él en el Lincoln; que . . . y el acusado no dieron una vuelta ni se dieron una cerveza ni volvieron otra vez a casa de . . . ; que . . . , la esposa . . . , no estaba esperándolos en el balcón; que . . . no lo llamó ni se montaron en el carro del acusado; que . . . no le dijo que cogiera por la carretera de Juana Díaz ni le dirigió hasta un sitio desolado; y que el acusado . . . y su esposa no llegaron alrededor de las once de la noche donde hay un lago en el barrio Coto Laurel de Ponce, Puerto Rico; que . . . y su esposa . . . no se apearon ni abrieron la puerta derecha del asiento de atrás del carro ni sacaron el cadáver de una mujer que después resultó ser . . . ; que . . . no echó en ningún canal de riego ni depositó allí el cadáver de . . . ; que el acusado no se puso a discutir con . . . ni con . . . porque hasta ese momento el acusado no sabía que el favor que se le había pedido era llevar el cadáver allí; que el acusado no se puso nervioso; que . . . ni su esposa . . . le repetían que no se apurara, que el aquí acusado no le iba a pasar nada porque eso no se iba a averiguar; que el acusado y . . . y su esposa . . . no se montaron en el carro y volvieron a Ponce, donde el acusado dejó, cerca de la casa de ellos; que el Fiscal . . . le hizo señalar el sitio donde fue tirado el cadáver de . . . sin que el aquí acusado tuviera conocimiento alguno de dicho sitio o de que hubiera sido tirado allí

dicho cadáver; que en uno de sus viajes a Salinas, Puerto Rico, no le dijo el aquí acusado a . . . 'que hacía tiempo estaba loco por decirle eso a las autoridades porque su conciencia no lo dejaba tranquilo,' refiriéndose a la participación de . . . y del aquí acusado con la muerte y desaparición de . . . ; que el Fiscal . . . le dijo que dijera en una declaración jurada ante dicho Fiscal por el aquí acusado que . . . y el aquí acusado llevaron a . . . y la echaron en un canal de riego y la dejaron allí; y que el Fiscal . . . le dijo al aquí acusado 'Qué has hecho, no ves que hay una demanda de un millón de pesos; yo tengo hijos, no sabes que yo tengo hijos y que mi título está corriendo peligro'; que el Fiscal . . . le gritaba 'te metemos a la cárcel por treinta años' en ocasión en que el aquí acusado prestara bajo juramento la declaración a que hemos hecho referencia,

siendo falso lo así declarado por el aquí acusado, quien, allí y entonces, tenía conocimiento de la falsedad de su testimonio, con intención, allí y entonces, de que dicha declaración surtiera efectos favorables a los peticionarios . . . en el procedimiento de Hábeas Corpus incoado por ellos y que era objeto de audiencia, siendo los hechos antes reseñados esenciales para la Corte pudiera dictaminar sobre la existencia o no de causa probable para el arresto y encarcelamiento de los mencionados . . . por el delito de Asesinato Genérico como co-autores de la muerte de . . . , teniendo, allí y entonces, además conocimiento el aquí acusado de que dichos hechos eran esenciales para el tribunal resolver el mencionado recurso de Hábeas Corpus."

Fue convicto y sentenciado a cumplir una pena de dos a diez años de presidio. Apeló.

1. El primer error planteado se refiere a la suficiencia de la acusación y se funda en la ausencia de una alegación que establezca los hechos verídicos por vía de antítesis, privándole así del derecho a ser informado con claridad de los actos delictivos que se le imputan, y, por ende, de la oportunidad de preparar una defensa adecuada. ■

Todo cuanto se requiere por el estatuto como uno de los elementos esenciales en una acusación por perjurio es que contenga una alegación expresa con respecto al carácter esen-

cial y la materialidad de los hechos que el acusado jurara como ciertos conociendo su falsedad, *Pueblo* v. *Nadal*, 64 D.P.R. 361 (1945); *Pueblo* v. *Marchany*, 61 D.P.R. 699 (1943); *Gandía* v. *El Pueblo*, 29 D.P.R. 109 (1921); *Pueblo* v. *García*, 24 D.P.R. 698 (1917); *Pueblo* v. *Ayala*, 13 D.P.R. 201 (1907); *Pueblo* v. *Colón*, 10 D.P.R. 1207 (1906), y además que los hechos declarados por el acusado son falsos. (²)  *Pueblo* v. *Bermúdez*, 75 D.P.R. 760 (1954); 38 Cal. Jur. 2d. §29.  Ambos requisitos fueron cumplidos en la acusación presentada en el presente caso, pues de la misma surge claramente que el acusado prestó testimonio en un procedimiento judicial sobre ciertos hechos *"esenciales para que la Corte pudiera dictaminar sobre la existencia o no de causa probable para el arresto y encarcelamiento de. . ."*, y previamente se expone que es *"falso lo así declarado por el aquí acusado."*  Cfr. las acusaciones por el mismo delito en *Pueblo* v. *Bermúdez*, 75 D.P.R. 760, 763 (1954;3 *Pueblo* v. *Corretjer*, 58 D.P.R.. 43, 45 (1941); *Pueblo* v. *Capre*, 44 D.P.R. 113, 115 (1932); *Pueblo* v. *Viader*, 23 D.P.R. 724 (1916); *Pueblo* v. *Oritz*, 11 D.P.R. 405 (1906); *Pueblo* v. *López*, 8 D.P.R. 575, 576 (1905); *Pueblo* v. *Pabón*, 7 D.P.R. 380 (1904).

La regla imperante bajo el derecho común requería que se alegara la falsedad de los hechos declarados por el acusado mediante una exposición de los hechos verídicos, y no era suficiente una alegación general al efecto de que lo declarado era falso, *State* v. *Nelson*, 77 N.W. 223, 224 (Minn. 1898). En algunas jurisdicciones se ha sostenido la necesidad de alegar la verdad de los hechos por vía de antítesis.  *Chenault* v.

---

(²) El apelante cita de 70 C.J.S. sec. 46 (a) para sostener su posición sobre la necesidad de alegar la antítesis de los hechos que se alega son falsos, pero esta glosa todo cuanto expone es la procedencia de contener una negación sobre la veracidad del testimonio alegadamente falso.  Dice textualmente: "It is necessary to negative the truth of the alleged false matter."

La sección que trata sobre la exposición de los hechos verídicos por vía de antítesis es la 46 (b) de dicha obra.

166

*State,* 122 So. 98, 100 (Miss. 1929), citando a *State* v. *Silverberg,* 29 So. 761 (Miss. 1901) ; *State* v. *Blitch,* 120 So. 355, 356 (Fla. 1929), citando a *Fudge* v. *State,* 49 So. 128 (Fla. 1909). Pero la regla más favorecida establece que es innecesario alegar la verdad por vía de antítesis sobre los cuales el acusado declaró falsamente, *Gray* v. *State,* 111 P. 825, 827-829 (Okla. 1910), y que únicamente cuando se trata de una declaración general—que contiene hechos verídicos y hechos falsos—es que surge la necesidad de particularizar los extremos jurados falsamente mediante una exposición de los hechos que son ciertos, *People* v. *Bradbury,* 103 P. 215, 217 (Cal. 1909) ; *cf. People* v. *Kriton,* 166 P.2d 45 (Cal. 1946). Tampoco ello es indispensable cuando de la narración de los hechos surgen claramente aquellos cuya falsedad alegadamente conocía el acusado, *Carter* v. *State,* 27 S.W.2d 781, (Ark. 1930) ; *cf. Dodson* v. *State,* 276 S.W. 2d 306 (Tex. 1955). La regla federal ([1]) tampoco requiere que se aleguen, por antítesis, los hechos ciertos, *United States* v. *Hiss,* 185 F.2d 822 (CA 2, 1950) ; *United States* v. *Laut,* 17 F.R.D. 31 1955). ■

El propósito que anima la particularización de los hechos falsos declarados por el acusado es permitir a éste que prepare una defensa adecuada y colocarle en posición de alegar

---

([1]) En las Reglas de Procedimiento Criminal sometidas a la Asamblea Legislativa no se hace referencia expresa al contenido de una acusación por el delito de perjurio como se hace en el código vigente. Se propone la Regla 35 (c), que sigue sustancialmente la Regla 7 (c) federal bajo la cual se decidió el caso de *Hiss,* infra, y que lee así:

"Una exposición de los hechos esenciales constitutivos del delito, redactada en lenguaje sencillo, claro y conciso, y de tal modo que pueda entenderla cualquier persona de inteligencia común. Las palabras usadas en dicha exposición se interpretarán en su acepción usual en el lenguaje corriente, con excepción de aquellas palabras y frases definidas por ley o por la jurisprudencia, las cuales se interpretarán en su significado legal. Dicha exposición no tendrá que emplear estrictamente las palabras usadas en la ley, y podrá emplear otras que tuvieren el mismo significado. En ningún caso será necesario el expresar en la acusación o denuncia presunciones legales ni materias de conocimiento judicial."

exposición anterior en caso de que sea posteriormente encausado por un delito similar que surja de la misma situación de hechos. Hemos examinado la acusación presentada en este casos y no vemos cómo pueda menoscabarse la defensa del acusado. Además, para determinar los hechos verídicos sólo es necesario suprimir el adverbio negativo "no" y la conjunción copulativa "ni" que aparecen en la relación de hechos expuestos en la acusación. Tampoco se trata de una declaración general susceptible de crear confusión, sino de una serie de hechos particulares, en relación con todos los cuales se imputa al acusado que declaró falsamente.(⁴)

2. Sostiene el acusado apelante que la omisión del ministerio público de probar la falsedad de *todos* los hechos expuestos en la acusación requiere que se le absuelva por insuficiencia de la prueba. Invoca la doctrina legal denominada "in solido". Se admite que quedó establecido por la prueba que el acusado hizo las siguientes afirmaciones: "que... y su esposa... no se apearon ni abrieron la puerta derecha del asiento de atrás del carro ni sacaron el cadáver de una mujer que después resultó ser...; que el Fiscal... le hizo señalar el sitio donde fue tirado el cadáver de ... sin que el aquí acusado tuviera conocimiento alguno de dicho sitio o de que hubiera sido tirado allí dicho cadáver; que en uno de sus viajes a Salinas, Puerto Rico, no le dijo el aquí acusado a... 'que hacía tiempo que estaba loco por decirle eso a las autoridades porque su conciencia no lo dejaba tranquilo', refiriéndose a la participación de... y del aquí acusado con la muerte y desaparición de...; que el Fiscal... le dijo que dijera en una declaración jurada ante dicho Fiscal por el aquí acusado que...., .... y el aquí acusado llevaron a... y la echaron en un canal de riego y la dejaron allí; y que el Fiscal... le dijo al aquí acusado 'Qué has hecho, no ves que hay una de-

---

(⁴) En la discusión del quinto error el apelante demuestra claramente que no se le perjudicó pues pudo determinar después de desfilar la prueba de cargo, los hechos sobre los cuales el fiscal no estableció su falsedad.

manda de un millón de pesos; yo tengo hijos, no sabes que yo tengo hijos y que mi título está corriendo peligro'; que el Fiscal... le gritaba 'te metemos a la cárcel por treinta años' en ocasión en que el aquí acusado prestara bajo juramento la declaración a que hemos hecho referencia." ▉

La doctrina de "in solido", que también tiene sus raíces en el derecho común, en efecto establece que cuando en la acusación se hace una relación general de la declaración que contiene los hechos falsos, y no se separan o particularizan dichos hechos, es necesario probar la falsedad de todo lo alegadamente falso. *Welch* v. *State*, 227 S.W. 301 (Texas 1921). Esta regla no se sigue en California, de donde procede nuestro estatuto, *People* v. *Mizer*, 99 P.2d 333, 335 (Cal. 1940); *People* v. *Pahrman*, 4 P.2d 242, 244 (Cal. 1931). Cuando, como en el presente caso, se alega se prestó testimonio falso sobre una serie de hechos, y la prueba lo establece en cuanto a uno o varios, pero no respecto a todos, se sostendrá la convicción siempre que aquellos sobre los cuales haya prueba sean esenciales o materiales, cfr. *People* v. *Gray*, 127 P.2d 72 (Cal. 1942); *People* v. *Pustau*, 103 P.2d 224 (Cal. 1940); *People* v. *Curtis*, 98 P.2d 228 (Cal. 1939). Un examen de los hechos que el propio apelante acepta como probados demuestra que la prueba se refiere a hechos esenciales y materiales. Además, si el acusado tenía dudas sobre cuáles eran los hechos cuya declaración falsa se le imputaba pudo haber presentado una solicitud de especificaciones, *United States* v. *Yetman*, 196 F. Supp. (Conn. 1961). No se cometió el error señalado. ▉

3 Se queja el apelante de la actuación del tribunal de instancia al recibir en evidencia la declaración jurada prestada por Ortiz Colón durante la investigación preliminar efectuada por los fiscales con miras a determinar responsabilidad criminal por la muerte de V... O..., delito por el cual se acusó finalmente a otras dos personas, pero del cual no se le precesó personalmente, sin que se le permitiera ofrecer evidencia para impugnar la voluntariedad de la misma.

No nos detendremos a considerar este planteamiento porque 1) no se trata de una confesión que requiera previamente se establezca su carácter voluntario—cfr. *Commonwealth* v. *Sumrak*, 25 A.2d 605, 607 (Pa. 1942)—; y 2) la declaración se ofreció únicamente para corroborar el testimonio de otros testigos sobre el hecho esencial de que el acusado hizo a sabiendas y bajo juramento manifestaciones falsas sobre hechos esenciales. Véase, *Pueblo* v. *Medina Rivera*, 38 D.P.R. 693, 697 (1928) en donde se trataba de una declaración falsa prestada por el acusado en una investigación practicada por el fiscal, y respecto a la admisibilidad de dicha declaración en un proceso por perjurio dijimos que "la declaración no era una confesión, sino una acusación contra otra persona. No se trata de una acusación contra Medina con motivo de una confesión hecha por él... y no hallamos motivo alguno para revocar la sentencia debido a tal supuesta falta de espontaneidad." Véanse, *Pueblo* v. *Llera*, 37 D.P.R. 164 (1927) y *Pueblo* v. *Pabón*, 7 D.P.R. 389 (1904).

A este respecto debe recordarse que la imputación de perjurio se refería a la declaración prestada por Ortiz Colón en la vista del recurso de hábeas corpus y no a la declaración prestada durante la investigación criminal, o sea la cuestión en controversia era la falsedad de los hechos declarados en el hábeas corpus.([5]) Así lo reconoció expresamente el abogado del acusado cuando al intentarse ofrecer el testimonio de uno de los fiscales investigadores objetó el testimonio por "irrelevante", "porque no se está enjuiciando a Luis Ortiz Colón por nada que dijera en el curso de una investigación, sino que se está enjuiciando por lo que dijera en un caso de hábeas corpus,... y ese testimonio del Fiscal no tiene nada que ver con el caso de hábeas corpus." T.E., pág. 210.) ■

4. Los errores relacionados con las instrucciones al jurado y otros comentarios hechos por el tribunal son insustan-

---

([5]) En cuanto a los antecedentes del presente caso, véanse, 80 D.P.R. 250 (1958) y 80 D.P.R. 633 (1958).

ciales. Leídas las instrucciones en conjunto—y no entresacando meras frases aisladas del texto—puede apreciarse que el tribunal expuso adecuadamente el derecho aplicable a los miembros del jurado, y que las instrucciones solicitadas por la defensa estaban comprendidas en las transmitidas o eran claramente improcedentes. Los comentarios y manifestaciones de que se queja el apelante no tienen la importancia que se les atribuye y no le causaron perjuicio, pues giran más bien alrededor de cuestiones semasiológicas.

*Se confirmará la sentencia dictada por el Tribunal Superior, Sala de Caguas, en 12 de junio de 1959.*